In the Matter of TATI I. OKEREKE, Petitioner, v STATE OF NEW YORK et al., Respondents.

Third Department, July 23, 1987

APPEARANCES OF COUNSEL

*Lipsitz, Green, Fahringer, Roll, Schuler & James (Paul J. Cambria, Jr.,* of counsel), for petitioner.

*Robert Abrams, Attorney-General (John J. O'Grady* of counsel), for respondents.

## OPINION OF THE COURT

MAHONEY, P. J.

Petitioner is licensed to practice as a physician in this State and is engaged in the practice of obstetrics and gynecology in the City of Buffalo. In 1976, physicians from Erie, Pennsylvania, who knew of petitioner through Dr. Gerald Beck, a former classmate of petitioner who practiced in Erie, began referring abortion patients to petitioner because of their reluctance to perform such procedures due to strong antiabortion sentiment in Erie. In order to better prepare himself for this type of practice, petitioner advertised in a Pennsylvania newspaper for a pregnancy counselor and subsequently hired Marjorie Diehl. Shortly after petitioner retained Diehl, Dr. Beck, who was petitioner's largest source of referrals of abortion patients, left Erie. Since petitioner's abortion business slackened, he terminated the services of Diehl. When Dr. Beck returned to Erie about two years later and again began referring patients to petitioner, Diehl was rehired.

Approximately one month after Diehl returned to work, she incorporated as the "Erie Women's Center" and therein administered pregnancy tests to petitioner's patients, advised them about the abortion procedure itself and the preabortion and postabortion procedures to be followed by petitioner. If the patient decided to have an abortion, she was given directions to petitioner's offices. All money that came to the Erie Women's Center emanated from petitioner and Diehl referred all prospective abortion patients to him.

Eventually, the Erie Women's Center ceased its operations in April 1980. Subsequently, disciplinary proceedings were commenced against petitioner and on nine dates between August 27, 1981 and February 1, 1983, a hearing was held before a hearing committee of the State Board of Professional Medical Conduct. Petitioner appeared, represented by counsel, testified on his own behalf and produced several other witnesses in his defense.

The hearing committee found petitioner guilty of the fraud-

ulent practice of medicine (Education Law § 6509 [2]) for having established the Erie Women's Center so that it might refer abortion patients to him in return for money. Additionally, petitioner was found guilty of unprofessional conduct (Education Law § 6509 [9]) for, *inter alia,* failing to timely file fetal death certificates, for splitting fees illegally (8 NYCRR 29.1 [b] [4]) and for advertising the Erie Women's Center in a manner not in the public interest (8 NYCRR 29.1 [b] [12]). Petitioner was also found guilty of professional misconduct for having participated in the splitting of fees in violation of Education Law § 6509-a. As a result of these findings, the hearing committee recommended that petitioner's license be suspended for five years but that the suspension be stayed and petitioner be placed on probation during the period of suspension. It was also recommended that petitioner be assessed a civil penalty of $30,000, representing a $10,000 fine for each of the three areas of misconduct, i.e., paying for referrals, not filing timely fetal death certificates and advertising not in the public interest.

Thereafter, the Commissioner of Health recommended that respondent Board of Regents (hereinafter the Board) accept the hearing committee's report in full. The Board's Regents Review Committee accepted the findings but modified the recommended sanction by reducing the five-year period of suspension to a concurrent three-year suspension with two years and nine months stayed. Further, the fine was reduced to $15,000 or $5,000 per specification, which was the maximum permissible fine that could be set. On September 26, 1986, the Board voted to adopt the findings of guilt as recommended by the hearing committee, but adopted the discipline recommended by the Regents Review Committee. On October 15, 1986, respondent Commissioner of Education executed an order carrying out the vote of the Board. Petitioner then commenced this proceeding seeking to annul the Commissioner of Education's determination.

We reject petitioner's principal argument that the Board's finding that he was guilty of illegal fee splitting is not supported by substantial evidence. Petitioner's argument appears to rely on that portion of Education Law § 6509-a which states that employees of a professional partnership or group are not prohibited from participating in the pooling of fees. Pooling fees refers to persons engaged in a common business who contribute their fees into a common fund which will be divided by common agreement. That is not our concern here.

Respondents argue, and we agree, that the employees referred to in the statute must be licensed professionals, not office help. Diehl was clearly not one of the professionals enumerated in the statute or a licensed or trained professional in the health care field. Education Law § 6509-a only allows sharing of fees by professional groups or partners and does not allow the sharing of fees between professionals and nonprofessionals regardless of their employment status. It is well settled that a professional's payment of a commission on fees realized from patients procured by an unlicensed person is improper and unprofessional (see, Matter of Bell v Board of Regents, 295 NY 101, 111; Matter of Popper v Board of Regents, 26 AD2d 871). This is true even though the nonprofessional is technically "employed" by the professional to perform these services (see, e.g., Matter of Bell v Board of Regents, supra, at 104). Accordingly, Diehl's status as a possible employee of petitioner does not remove this case from the ambit of Education Law § 6509-a. Further, since Diehl expressly testified at the hearing that she solicited patients exclusively for petitioner and, further, that the remuneration that she received was essentially dependent upon the number of patients she referred to petitioner, we are constrained to conclude that the charge of fraudulent practice of medicine contained in the first specification of the statement of charges is supported by substantial evidence, as are the various charges of unprofessional conduct relating to, inter alia, improper referrals and fee splitting (see, 8 NYCRR 29.1 [b] [3], [4]) contained in the fourth specification. Further, the record supports the finding of professional misconduct in splitting fees in violation of Education Law § 6509-a.

We reach a different conclusion, however, with respect to the charge of unprofessional conduct based on advertising not in the public interest. Despite the hearing committee's finding of guilt on the charge of flamboyant or sensational advertising and the subsequent affirmance of that finding, the alleged advertisements were never produced at the hearing or introduced into the record. Since it is improper for an administrative agency to base an adjudicatory decision upon evidence or information outside the record, the charge of unprofessional conduct contained in paragraph 7 (c) of the fourth specification must be annulled (see, Matter of Simpson v Wolansky, 38 NY2d 391, 396; Matter of Cohen v Ambach, 112 AD2d 497, 498).

Finally, we cannot conclude that the penalty imposed by the

Board was unduly harsh and excessive. The Board modified the hearing committee's recommendation that petitioner be suspended and placed on probation for five years by imposing a concurrent three-year sentence of suspension with two years and nine months stayed. Next, even though the findings with respect to the advertising charge should be annulled, it is clear that the penalties imposed need not be reduced or modified. The sentences imposed upon petitioner for each of the charges were concurrent. Thus, the removal of petitioner's period of suspension with respect to the advertising charge still subjects petitioner to the same discipline on the remaining charges (see, Matter of Turley v Board of Regents, 54 AD2d 1020, 1021). Further, since the charge relating to flamboyant advertising was only contained in amended paragraph 7 (e) of the fourth specification, the annulment of that charge still leaves four sustained charges in that specification that are supported by substantial evidence. Thus, the fine imposed for that specification need not be disturbed. Since fixing punishment is primarily a function of the Board (Education Law § 6510-a [2]), we should not interfere unless the punishment is so disproportionate to the offense, in light of all the circumstances, as to be shocking to one's sense of fairness (see, Matter of Halyalkar v Board of Regents, 127 AD2d 346; Matter of Meshel v Board of Regents, 110 AD2d 976, 977, lv denied 65 NY2d 608). We do not find the penalties imposed upon petitioner to be shockingly severe.

KANE, CASEY, YESAWICH, JR., and HARVEY, JJ., concur.

Determination modified, without costs, by annulling so much thereof as found petitioner guilty of the charge alleged in paragraph 7 (c) of specification four, and, as so modified, confirmed.