■ In the Matter of Maximo C. Chua, Petitioner, v Mark R. Chassin, as Commissioner of Health of the State of New York, et al., Respondents. [627 NYS2d 152] —White, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of respondent Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

In November 1993, the Office of Professional Medical Conduct (hereinafter OPMC) filed charges of professional misconduct against petitioner, a licensed physician who practiced

·acupuncture and homeopathic medicine.* Following an evidentiary hearing focusing on petitioner's treatment of three patients (hereinafter patients A, B and C), a Hearing Committee of the State Board for Professional Medical Conduct (hereinafter the Committee) found petitioner guilty of negligence on more than one occasion in the treatment of patients A, B and C, gross negligence and gross incompetence in the treatment of patient A, and incompetence on more than one occasion with respect to patients A and B. The Committee voted to restrict petitioner's license to the practice of acupuncture and ordered him to undergo evaluation and retraining. The Committee further provided that, if petitioner successfully completed retraining, he would be on probation for two years.

Thereafter, due to the parties' conflicting interpretations of the Committee's order, OPMC sought a review of the order by the Administrative Review Board for Professional Medical Conduct (hereinafter the ARB). The ARB sustained the Committee's findings of misconduct but overruled the penalty it had levied, imposing instead the penalty of revocation of petitioner's license. Petitioner then commenced this CPLR article 78 proceeding.

At oral argument, petitioner raised the issue of whether OPMC's appeal to the ARB was timely. Inasmuch as this issue was not raised at the administrative level, we deem it waived (see, Matter of Colella v New York State Dept. of Envtl. Conservation, 196 AD2d 162, 168). Were we to consider it, we would find the appeal timely since the record shows that OPMC sought review within 14 days of the service upon it of the Committee's determination (see, Public Health Law § 230-c [4] [a]).

Petitioner next argues that the Committee's findings are not supported by substantial evidence. Because the Committee's determination was reviewed by the ARB, the proper standard for review is whether the ARB's determination was arbitrary and capricious, affected by error of law or an abuse of discretion (see, Matter of Finelli v Chassin, 206 AD2d 717, 718-719; Matter of Rudell v Commissioner of Health, 194 AD2d 48, 50, lv denied 83 NY2d 754). Under this test, the inquiry is whether the administrative determination has a rational basis

---

* Petitioner's expert defines homeopathic medicine as involving the administration of vitamins and minerals to attempt to boost the body's natural defenses and the strength of a patient who is suffering from a chronic and debilitating illness.

supported by fact *(see, Matter of Pell v Board of Educ.,* 34 NY2d 222, 231). In making this inquiry, we do not resolve credibility issues or weigh the testimony of expert witnesses, for those issues are solely within the province of the administrative factfinder *(see, Matter of Moss v Chassin,* 209 AD2d 889; *Matter of Santasiero v Sobol,* 199 AD2d 835, *lv denied* 83 NY2d 754).

The record shows that on July 29, 1993, while petitioner was administering an intravenous mixture of vitamins and minerals to patient A, a 14-year-old girl suffering from asthma, she developed a severe allergic reaction, suffered respiratory arrest and died shortly thereafter. OPMC's expert witness testified that there was no indication that patient A required any of these vitamins and minerals and that they should not have been administered to her intravenously considering the elevated risk posed by her asthmatic condition. He further opined that a reasonably prudent physician would not, as petitioner did, administer drugs with lapsed expiration dates or administer them intravenously where the instructions stated they should not be so administered. The record further shows that when patient A experienced an anaphylactic reaction, petitioner failed to administer oxygen properly and failed to give her epinephrine which would have reversed the anaphylactic process.

Petitioner's treatment of patients B and C also fell below the standards of a reasonably prudent physician in that, even though there was no medical necessity, he administered streptomycin and gentamicin to both of them. In the case of patient B, petitioner also failed to perform audiometry studies to determine if her hearing was being damaged by these drugs. He also administered intravenous mixtures of vitamins and minerals to these patients with no indication they required such medications.

In our view this record provides ample support for the ARB's findings since petitioner's conscious disregard of the tenets of good medicine was egregious and fell well below the degree of care that a reasonably prudent physician would have exercised under the same circumstances *(see, Matter of Bogdan v New York State Bd. for Professional Med. Conduct,* 195 AD2d 86, 88, *appeal dismissed, lv denied* 83 NY2d 901; *Matter of Gandianco v Sobol,* 171 AD2d 965).

Petitioner has arrayed several arguments against the penalty of revocation. First, he contends that he never had notice that his qualification to practice acupuncture as a physician was in issue. As a consequence, he claims he was denied the

opportunity to explain to the ARB the "disastrous consequences" of relegating him to the nonphysician acupuncture licensing provisions of the Education Law.

In administrative disciplinary proceedings, a notice is sufficient if the charges contained therein are reasonably specific so as to allow for the preparation of an adequate defense (see, *Matter of Block v Ambach,* 73 NY2d 323, 333; *Matter of Denis v Board of Regents,* 192 AD2d 963, 966). This standard was satisfied here since the Commissioner's order and notice of hearing included a statement that "THESE PROCEEDINGS MAY RESULT IN A DETERMINATION THAT YOUR LICENSE * * * BE REVOKED". In addition, petitioner was summarily suspended from the practice of medicine before the hearing and OPMC's attorney, in her closing statement, urged the Committee to revoke petitioner's license. Moreover, the ARB has the power to impose its own penalty (see, *Matter of Spartalis v State Bd. for Professional Med. Conduct,* 205 AD2d 940, 941, *lv denied* 84 NY2d 807). Thus, for these reasons, we find petitioner's argument regarding lack of notice unpersuasive.

Finally, petitioner maintains that the penalty of revocation, particularly as it pertains to his ability to practice acupuncture as a physician, is excessive. The standard by which we measure the propriety of a penalty imposed upon a physician is whether it is so incommensurate with the offense as to shock one's sense of fairness (see, *Matter of Jean-Baptiste v Sobol,* 209 AD2d 823; *Matter of Golan v Sobol,* 195 AD2d 634, *lv denied* 82 NY2d 661). Considering petitioner's disregard of the risk to which he exposed his patients by improperly administering substances they did not require and which were beyond their expiration dates, together with his inability to perform adequate life-saving procedures on patient A, it is evident that the public would be placed at risk if petitioner was allowed to continue to practice medicine since he lacks the basic skills and knowledge required of a physician. Consequently, we do not view the total revocation of his license to be an excessive or disproportionate penalty (see, *Matter of Santasiero v Sobol,* 199 AD2d 835, *supra; Matter of Matala v Board of Regents,* 183 AD2d 953; *Matter of Villaflor v Board of Regents,* 109 AD2d 925).

Mikoll, J. P., Mercure, Yesawich Jr. and Peters, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.