■ In the Matter of ZIYAD MANSUR, Petitioner, v STATE OF NEW YORK DEPARTMENT OF HEALTH BOARD FOR PROFESSIONAL MEDICAL CONDUCT et al., Respondents. [636 NYS2d 167] —Mercure, J. P. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of respondent Administrative Review Board for Professional Medical Conduct which, *inter alia*, partially suspended petitioner's license to practice medicine in New York.

By this proceeding, petitioner, a physician specializing in obstetrics and gynecology, challenges a determination of respondent Administrative Review Board for Professional Medical Conduct (hereinafter respondent) finding him guilty of negligence, ordering excessive treatment and failure to maintain adequate records with regard to a number of patients and, by way of penalty, directing that petitioner undertake a course of retraining and serve a five-year probationary period. We are not persuaded by the contentions that, because of the absence of probative evidence in the hearing record, respondent's determination was arbitrary, capricious, affected by an error of law or an abuse of discretion and, further, that the

imposition of a five-year probationary period, a five-fold increase over that recommended by the Hearing Committee, was arbitrary and capricious. We accordingly confirm respondent's determination and dismiss the petition.

First, we conclude that the testimony of Timothy Vinciguerra, a board certified obstetrician and gynecologist called as an expert witness by the Office for Professional Medical Conduct, provided ample evidentiary support for each finding of guilt. The evidence showed that patient B went to a hospital emergency room on May 14, 1992 with complaints of abdominal pain and irregular bleeding for several days. Examination and ultrasound studies showed a four-week pregnancy with a sac but no fetus. Petitioner performed a D&C on patient B the following day, removing a scant amount of tissue. Despite patient B's history of adhesions in her left fallopian tube, making her more susceptible to an ectopic pregnancy, heavy cramping and bleeding on several occasions, a positive pregnancy test and the absence of fetal tissue in patient B's uterus, petitioner appears not to have considered a diagnosis of ectopic pregnancy. Thereafter, patient B suffered a ruptured ectopic pregnancy, requiring emergency surgery on May 25, 1992 and subjecting her to unnecessary health risks and potential infertility. According to Vinciguerra, petitioner deviated from acceptable standards of medical care in his treatment of patient B by failing to order additional blood tests that would have divulged an increasing hormone level (and thus the continuation of patient B's pregnancy) following the May 15, 1992 D&C, in failing to follow up on a pathology report that revealed no evidence of pregnancy tissue obtained on the D&C, and in failing to warn patient B of the possibility of an ectopic pregnancy.

With regard to patients C through S, petitioner performed laser vaporizations or conizations of the cervix under general anesthesia. In none of the cases was petitioner's stated diagnosis of dysplasia indicated or confirmed by the patient's pap smear or subsequent cervical biopsy reports. To the contrary, each of the patients' pathology reports indicated minimal or normal physiological changes, and petitioner based his diagnosis of dysplasia solely upon his own visual examination with a colposcope. According to Vinciguerra, there was no justification for petitioner's diagnosis of cervical dysplasia, and the laser vaporizations and conizations were, accordingly, unnecessary. Further, petitioner made no charted indications that he suspected false negatives in any of the patients' pap smears or that he visibly detected abnormal lesions. In any event, Vin-

ciguerra testified, it is inappropriate to treat cervical dysplasia based upon a pap smear or visual colposcopic findings alone, without confirmation by a pathologist.

Under the circumstances, and without resolving issues of credibility or weighing the testimony of expert witnesses, which are matters solely within the province of the administrative fact finder, we conclude that respondent's determination has a rational basis supported by fact (*see, Matter of Chua v Chassin*, 215 AD2d 953, 954-955, *lv denied* 86 NY2d 708; *Matter of Moss v Chassin*, 209 AD2d 889, 891, *lv denied* 85 NY2d 805, *cert denied* — US —, 116 S Ct 170). As a final matter, the penalty imposed was by no means " ' "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness" ' " (*Matter of Pell v Board of Educ.*, 34 NY2d 222, 233, quoting *Matter of McDermott v Murphy*, 15 AD2d 479, *affd* 12 NY2d 780; *see, Matter of Berges v Chassin*, 216 AD2d 698; *Matter of Finelli v Chassin*, 206 AD2d 717, 719).

Crew III, White, Casey and Yesawich Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.