In the Matter of STANLEY SUPKIS et al., Petitioners, v TOWN OF SAND LAKE ZONING BOARD OF APPEALS et al., Respondents. [642 NYS2d 374] —Cardona, P. J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Rensselaer County) to review a determination of respondent Town of Sand Lake Zoning Board of Appeals which granted a use variance to respondent Ackner Fuels, Inc.

In 1968, respondent Ackner Fuels, Inc. purchased a four-acre parcel of land located in the Town of Sand Lake, Rensselaer County. In 1969, Ackner developed $1^1/_2$ acres of the property to accommodate, *inter alia*, a 30,000-gallon propane storage tank surrounded by a fence. Ackner bought an additional $7^1/_2$ acres adjacent to the first parcel in 1971, creating a total of approximately $11^1/_2$ acres. In 1972, the Town adopted zoning regulations that designated the area encompassing Ackner's property as "residential/recreational". Ackner's prior use of the property in the fenced-in area was apparently grandfathered as a prior nonconforming use.

Notwithstanding the new zoning restrictions, Ackner evidently expanded its use of the property outside the fenced-in area to, *inter alia*, store construction materials and propane tanks as well as park and maintain its vehicles. The situation continued until March 1994 when respondent Town of Sand Lake Zoning Board of Appeals (hereinafter the ZBA) deter-

mined that Ackner's use outside the fenced-in area was in violation of the zoning regulations. In response, Ackner filed an application for a use variance. Following public hearings, the ZBA granted Ackner's request, prompting petitioners, who are neighboring landowners, to commence this CPLR article 78 proceeding.

Initially, we note that Supreme Court should have decided this case on the merits instead of transferring it to this Court (*see*, Town Law § 267-c). Nevertheless, in the interest of judicial economy, we will decide the matter on its merits (*see*, *Matter of Delavore v Scheyer*, 215 AD2d 478, 479). We confirm.

In order to obtain a use variance, the applicant must show that (1) the property cannot yield a reasonable return, (2) the hardship results from unique characteristics of the property, (3) the proposed use will not alter the essential character of the neighborhood, and (4) the hardship was not self-created (Town Law § 267-b [2] [b]). To satisfy the first requirement, the landowner must submit " 'dollars and cents' " evidence establishing that "no permissible use would yield a reasonable return" (*Matter of Kingsley v Bennett*, 185 AD2d 814, 816; *see*, *Matter of Drake v Zoning Bd. of Appeals*, 183 AD2d 1031, 1032).

Here, the ZBA determined that the property would not yield a reasonable return with a continuation of only the grandfathered use. The ZBA based this decision, *inter alia*, on an appraisal by the Howard Group and the testimony of Howard Carr and Richard Lampert, the two appraisers who prepared that report. According to the appraisal, the market value of the subject premises as a residential lot was $20,000. Lampert testified that the appraisal included an examination of the market in the general area, soil and water studies, site visits and research of data from the local assessor's office. With respect to the soil problem, Lampert admitted that while soil in Rensselaer County was poor, the soil at Ackner's site was particularly deficient. He submitted a map showing that the quality of the soil was worse in comparison to surrounding areas. Lampert stated that it was "probably the most inferior site in that neighborhood". He also submitted soil test summaries showing that percolation tests resulted in "low perk" levels, indicating that the land could not be subdivided. Lampert noted that there was also a steep slope to the property with the rear dropping an additional 40 feet. He concluded that, based on these factors, it was not economically feasible to develop the property residentially. Carr testified that, based on the original aggregate purchase price of $7,000 for the entire $11^{1}/_{2}$ acres, Ackner's annualized return on its investment

would be 3.8%, which was not a reasonable rate of return compared to the marketplace in general.

Based on this evidence, we cannot say that the ZBA's conclusion that Ackner satisfied its burden of showing a lack of a reasonable return was arbitrary or capricious (*see, Matter of Greco v Denison,* 195 AD2d 660). Instead, we find that it had a rational basis and was supported by substantial evidence in the record (*see, Matter of Khanuja v Denison,* 203 AD2d 679, 680). While petitioners submitted appraisal reports which were at odds with the Howard Group's conclusions, issues of credibility were presented which were within the sole province of the ZBA to resolve in its capacity as administrative factfinder (*see, Matter of Chua v Chassin,* 215 AD2d 953, 955, *lv denied* 86 NY2d 708). In addition, petitioners contend that there was a bona fide offer made to Ackner to purchase the property for $50,000; however, the record indicates to the contrary. Although there were discussions concerning a possible sale, the parties never arrived at any final terms of sale.

Turning to the second requirement concerning whether the hardship was unique, the ZBA had to determine if the conditions were peculiar to and inherent to the subject property in comparison to other properties in the same zoning district (*see, Matter of First Natl. Bank v City of Albany Bd. of Zoning Appeals,* 216 AD2d 680, 682). If neighboring properties share the same characteristics, the claim of uniqueness is eviscerated (*see, Matter of Citizens for Ghent v Zoning Bd. of Appeals,* 175 AD2d 528, 530). Here, the ZBA determined that the hardship was unique in light of the "cumulative negative factors" of an electrical substation on the neighboring property, a Town highway garage next to that property, poor soil conditions and the cost of removal of the 30,000-gallon storage tank. Irrespective of the fact that Ackner's neighbors were also in close proximity to the substation and garage, the evidence concerning the soil conditions as well as the cost of removal of the storage tank convinces us that the ZBA's finding of uniqueness had a rational basis and was supported by substantial evidence (*see, Matter of Khanuja v Denison,* 203 AD2d 679, 680, *supra*).

We also find sufficient evidence in the record to support the ZBA's conclusion that the use variance would not alter the essential character of the neighborhood because its nature was both residential and industrial. While Ackner proposed to add a 4,000-square foot garage that would presumably increase traffic, the presence of both the Town garage and the electrical substation support the ZBA's finding that the added use would not change the nature of the neighborhood. Based on this rec-

ord, it cannot be said that the proposed use would be " 'materially detrimental to the public welfare and injurious to other property in the vicinity' " (*Matter of Greco v Denison*, 195 AD2d 660, 661, *supra*). The record further supports the ZBA's conclusion that the hardship was not self-created insofar as Ackner purchased the property prior to the enactment of the zoning regulations (*see*, *Matter of Swan v Depew*, 167 AD2d 835, 836). Petitioners' arguments to the contrary concern Ackner's actions on the property after the zoning restrictions were imposed. These bear no relation to the question of whether the hardship was self-created.

Petitioners also seek to overturn the ZBA's determination on the ground that it violated the requirements of the State Environmental Quality Review Act (ECL art 8). This argument is based on the fact that the ZBA issued a negative declaration as to the possible environmental impact of Ackner's proposal, thereby obviating the need for an environmental impact statement. Our review of the record, however, reveals that the ZBA properly identified the relevant areas of environmental concern, took the required "hard look" at them and made a reasoned elaboration of the basis for its findings (*see*, *Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417). The ZBA based its determination on, *inter alia*, the site plan, testimony of all the parties, the recommendation of the Town Planning Board and the environmental assessment form submitted by Ackner. It noted that the site was already adjoining an electrical power station and Town garage. It took into account the prior existence of the 30,000-gallon tank which already entailed truck traffic as well as other types of commercial uses permitted outright or by special exception under the zoning regulations. It pointed out that the latter factors could also require "the storage of machinery and equipment" and produce higher noise levels. The ZBA's findings addressed petitioners' concerns regarding increased truck usage and the "historical aspects" of the community, as well as petitioners' concern with groundwater problems. In our view, petitioners' arguments of environmental consequences are not sufficiently supported by the record (*see*, *Matter of Schulz v New York State Dept. of Envtl. Conservation*, 200 AD2d 793, *appeal dismissed* 83 NY2d 848, *lv denied* 83 NY2d 758).

We have considered petitioners' remaining arguments and reject them as unpersuasive.

White, Casey and Peters, JJ., concur; Spain, J., not taking part. Adjudged that the determination is confirmed, without costs, and petition dismissed.