■ In the Matter of STEVEN BRIGHAM, Petitioner, v BARBARA DEBUONO, as Commissioner of the New York State Department of Health, Respondent. [644 NYS2d 413] —Spain, J.

In January 1994 the State Board for Professional Medical Conduct (hereinafter BPMC) charged petitioner, a general practitioner licensed in 1987, with negligence and gross negligence in connection with his performance of late-term abortions on two patients. Petitioner performed a dilatation and evacuation (hereinafter D&E) procedure on both patients. The statement of charges pertaining to petitioner's treatment of patients A and B include 12 separate charges (hereinafter the relevant charges will be referred to as follow: as to patient A [A1, A2-A9]; as to patient B [B1, B2, B3]). An 11-day hearing was held before a Hearing Committee of the State Board for Professional Medical Conduct (hereinafter the Committee). After the hearing, the Committee recommended that respondent continue petitioner's summary suspension; thereafter the Committee sustained charges A1, A3-A9, B2 and B3, found petitioner guilty of professional misconduct and imposed a penalty of revocation of petitioner's license to practice medicine in New York. Upon administrative appeal, the Administrative Review Board for Professional Medical Conduct (hereinafter ARB) sustained the Committee's findings regarding the charges and the penalty. Petitioner commenced this CPLR article 78 proceeding seeking annulment of the ARB's determination.

Petitioner initially contends that he was not afforded adequate notice regarding the charges against him because the charges were distorted so as to circumvent any defense he prepared in contravention of his due process rights. It is axiomatic that the subject of an administrative disciplinary proceeding "is entitled to fair notice of the charges against him or her so that he or she may prepare and present an adequate defense and thereby have an opportunity to be heard" (*Matter of Block v Ambach*, 73 NY2d 323, 332). However, "the charges need only be reasonably specific, in light of all the relevant circumstances, to apprise the party whose rights are being determined of the charges against him" (*supra*, at 333; *see, Matter of Garo-*

*falo v Dowling*, 223 AD2d 770, 772; *Matter of Langhorne v Jackson*, 213 AD2d 909, 910). Our review of the record reveals that the charges against petitioner covered all aspects of the abortion procedures performed and were not limited to the adequacy of the dilatated cervix, which charges (A2 and B1) were not sustained. We conclude that petitioner was adequately apprised of each of the charges against him and that he had ample opportunity to defend himself against all charges, as he did so vigorously during the course of these proceedings.

We also find no merit to petitioner's contentions that standards of care employed by the Committee were without authority, without any basis in the record and were imposed retrospectively and unilaterally. The proper standard of review is whether the ARB's "determination was made in violation of lawful procedure, was affected by an error of law, was arbitrary and capricious or an abuse of discretion" (*Matter of Minielly v Commissioner of Health of State of N. Y.*, 222 AD2d 750, 751; *see, e.g., Matter of Chua v Chassin*, 215 AD2d 953, 954, *lv denied* 86 NY2d 708; *see also*, CPLR 7803 [3]). This Court's inquiry under this standard is "whether the administrative determination has a rational basis supported by fact" (*Matter of Chua v Chassin, supra*, at 954-955; *see, e.g., Matter of Mansur v State of N. Y. Dept. of Health Bd. for Professional Med. Conduct*, 223 AD2d 774; *Matter of Okereke v State of New York*, 129 AD2d 373, 376, *lv denied* 70 NY2d 611). Furthermore, this Court will not decide credibility issues or weigh the testimony of expert witnesses since these issues are the sole province of the administrative fact finder (*see, Matter of Chua v Chassin, supra*, at 955; *Matter of Moss v Chassin*, 209 AD2d 889, 891, *lv denied* 85 NY2d 805, *cert denied* — US —, 116 S Ct 170).

As to charge A1, petitioner asserts that the Committee developed a new counseling standard by imposing, *inter alia*, a requirement that a patient be affirmatively advised of the risk of the psychological impact of a voluntary termination of pregnancy. Although we agree with petitioner that such a standard was not proven, the record amply supports the ARB's determination that patient A was not otherwise afforded appropriate counseling. It is uncontroverted that patient A was given a fact sheet for a first-term abortion which does not explain the complications of a late second-term abortion, even though she was requesting a late second-term abortion. The patient stated that there was no discussion of the fact sheet. She also testified that no one spoke to her about her social situation, the reason for the delay in seeking an abortion, her understanding or knowledge about abortions, or alternatives to

abortion. The record reveals that the majority of the counseling was conducted by one of petitioner's employees whose testimony was discredited by the Committee.

It is clear that the ARB did not limit its decision on a need for counseling regarding the psychological affects of an abortion; its determination was supported by the standard of care for counseling as testified to in the record. Additionally, petitioner's argument that he is not liable for the clinic's counselor's failure to adequately inform his patients is totally without merit; there is uncontroverted evidence in the record that the standard of care with respect to counseling imposes on the physician the responsibility to ensure that his or her patient is adequately counseled even if the physician delegates that responsibility. Further, a physician is required to keep adequate records of the counseling procedure and the record supports the ARB's conclusion that the Committee properly found that petitioner's records were inadequate in this regard.

Next, petitioner correctly contends that a transfer arrangement with a physician who has hospital privileges meets the requisite standard of care; the Committee erred in its determination that the standard of care requires that a transfer arrangement must be with a hospital. Petitioner testified that he had verbal backup in place with one physician who worked at the same facility and a written arrangement with William Knorr, another physician at the facility. However, petitioner testified that he could not say with certainty whether Knorr had complete hospital privileges or conditional privileges. Furthermore, there was nothing mentioned in the alleged transfer agreement with respect to Knorr's privileges or regarding Knorr admitting any patients on petitioner's behalf. The record also reveals that petitioner did not notify Knorr when complications arose and that he acted against the standard of care when he relied on 911 to send the patient to the hospital, which is further evidence of his lack of any backup arrangement. We conclude that although the Committee's decision misstated the proper standard of care, the ARB's determination that petitioner lacked any appropriate transfer arrangement was rationally based on the testimony and other evidence in the record.

We further conclude that the Committee's determination regarding petitioner's severely limited scope of visualization with respect to patient A was proper. Petitioner argues that the findings of gross negligence and negligence were predicated on petitioner visualizing the uterus, which is not only impossible to do but is not a required medical standard. Petitioner

further alleges that since this incorrect standard forms the basis for numerous counts, the entire determination must be annulled. Respondent contends that the decision is not predicated on incorrect medical standards and, even if the Committee misspoke, the fundamental rationality and soundness of the decision is not compromised. The allegations which petitioner points to discuss the ability to perform this procedure (A3), the inability to see the extent of the laceration which required patient A to be transferred (A5) and the inability to appreciate the seriousness of the injuries (A6).

The patient, who was not a good candidate for a D&E, had an unusual anatomy which made visualization of the operative site difficult, thereby making the procedure difficult to perform on an outpatient basis. BPMC's expert testified that the laceration went beyond petitioner's field of vision and that the cervix was visible. The Committee found that petitioner was not equipped to see and determine the full extent of the laceration into the patient's lower uterine segment. The allegations at issue discuss the appropriateness of performing, continuing the abortion and the extent of the injuries. The ARB agreed with the Committee findings that his inability to see the extent of the laceration into the uterine segment required petitioner to promptly transfer his patient to the hospital. We conclude that the ARB's determination sustaining the Committee's findings was not arbitrary and is amply supported in the record.

Continuing, petitioner contends that the ARB improperly sustained the Committee's determination that petitioner inappropriately closed the forceps in patient B's body cavity causing injury. Upon our review of the record, we conclude that the ARB's determination sustaining the Committee's finding that the patient's injuries were caused by petitioner's improper use of forceps by repeatedly grasping tissue is rationally based.

Petitioner also alleges that his medical experts were arbitrarily denied due consideration. We disagree. BPMC's medical expert was a licensed physician who was board certified, specializing in obstetrics and gynecology; she is the medical director of Planned Parenthood of Westchester/Rockland and supervises and teaches standards for medical care and is on the staff of Westchester County Medical Center. She had experience in the utilization of D&Es in late-term abortions; she had performed over 100 second-term abortions and had performed a D&E on a patient at 26 weeks. Petitioner presented three experts, all with extensive experience and backgrounds. Two of petitioner's medical experts were also experienced in second-term abortions. The Committee neither

credited nor discredited the testimony of petitioner's expert witnesses. It is clear that all of the experts had extensive background and experience in the field of abortion and their qualifications were generally similar. The Committee did not entirely accept the testimony of BPMC's expert; it noted that it took exception to some of her opinions.

Although the testimony given by each of the experts was not consistent as to accepted medical standards, it is not this Court's responsibility to weigh the testimony of the expert witnesses (*see, Matter of Moss v Chassin*, 209 AD2d 889, 891, *supra*). The weight afforded the testimony of expert witnesses is solely within the province of the administrative fact finder (*see, Matter of Mansur v State of N. Y. Dept. of Health Bd. for Professional Med. Conduct*, 223 AD2d 774, 776, *supra*). Absent an abuse of discretion, we will not disturb the ARB's determination.

Additionally, petitioner's assertion of bias is not supported by the record nor does he make any factual showing of bias. A mere allegation of bias is insufficient to set aside an administrative determination (*see, Matter of Warder v Board of Regents*, 53 NY2d 186, 197, *cert denied* 454 US 1125; *Matter of Chace v DeBuono*, 223 AD2d 961; *Matter of Kabnick v Chassin*, 223 AD2d 935, 936; *Matter of Moss v Chassin, supra*). Petitioner makes no factual showing of any bias emanating from the ARB or the Committee; the fact that some errors were made with respect to the standards applied does not, by itself, evidence bias.

Finally, petitioner contends that the penalty of revocation of his license was overbroad and excessive. Here, it is uncontroverted that two patients in petitioner's care were subjected to harrowing experiences and suffered serious injury. Significantly, petitioner's testimony indicated that he exhibited no understanding that he erred in judgment. Unless the punishment is so disproportionate in light of the offense that it shocks one's sense of fairness, the court will not interfere with an ARB decision as to the penalty (*see, Matter of Mansur v State of N. Y. Dept. of Health Bd. for Professional Med. Conduct, supra*, at 776; *Matter of Garofalo v Dowling*, 223 AD2d 770, 774, *supra*). In determining the sanction to be imposed, the ARB can consider both aggravating and mitigating circumstances as well as consider the protection of society, rehabilitation and deterrence (*see, Matter of Diamond v Sobol*, 145 AD2d 786, 787). We conclude, given the serious injuries inflicted upon two patients, petitioner's lack of insight as to his limitations and his failure to comprehend his errors in judgment, that re-

habilitation was not an appropriate option and, further, that the revocation of petitioner's license is not shocking to one's sense of fairness (*see, Matter of Pell v Board of Educ.*, 34 NY2d 222, 234; *Matter of Chace v DeBuono, supra; Matter of Abbasi v Chassin*, 219 AD2d 765).

Mercure, J. P., White, Casey and Peters, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.