◼ In the Matter of CHARLES H. KITE, Petitioner, v BARBARA DeBUONO, as Commissioner of the New York State Department of Health, et al., Respondents. [650 NYS2d 384] —Spain, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of respondent Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

In October 1989 the Department of Health's Office of Professional Medical Conduct (hereinafter OPMC) commenced a professional misconduct proceeding against petitioner, a neurosurgeon; subsequently petitioner was found guilty of negligence and incompetence in the care of five patients. Petitioner was suspended from practicing medicine for a period of four years; however, the suspension was stayed and petitioner was placed on probation for four years. Paragraph 1 (e) of the terms of probation required, *inter alia*, that petitioner enroll in and diligently pursue and complete a two-year retraining program in neurosurgery within the period of probation. Petitioner never sought an appeal of the findings, the stayed suspension or the terms of probation.

On January 1, 1992, in accordance with the terms of his probation, petitioner entered a retraining program with the Department of Neurosurgery at New York University Medical Center Hospital for Joint Diseases (hereinafter NYU). Thereafter, by letter dated April 5, 1992, the Chairman of Neurosur-

gery at NYU-Bellevue Medical Center indicated that petitioner's performance thus far was "exemplary". In January 1993 Jeffrey Wisoff, an assistant professor in the Department of Neurosurgery who coordinated NYU's residency program in neurosurgery, requested that petitioner become a Fellow for the second year of his retraining at the suggestion of Michael Dogali, the Director of the Division of Functional and Stereostatic Neurosurgery (hereinafter the Division); Wisoff's request was subsequently approved by OPMC.

However, in early May 1993 Dogali notified Wisoff that due to "ongoing difficulties" petitioner could not continue his service with the Division. In a separate letter to Wisoff, Dogali substantiated his complaints and set forth the facts of four cases involving patients in which Dogali had difficulties supervising petitioner, citing poor performance, poor attitude, inappropriate judgment and refusal to follow his supervisor's directions regarding the care and treatment of patients. Further, statements by Dogali in the record indicate that petitioner continued to do surgical procedures beyond that which he was explicitly instructed to do, resulting in harm to his patients.

In June 1993 petitioner informed OPMC that he wished to finish his retraining at NYU during the summer of 1993 so he could return to and complete an MBA program in September 1993; he requested that his probationary period be reduced by four months and, further, that he be given credit in full for the probation condition which required that he complete a two-year training program. In separate letters dated June 11, 1993 to Wisoff and Dogali, petitioner resigned from the NYU program. In January 1994, despite the recommendations of Wisoff and the Chairman of the Neurosurgery Department, OPMC denied petitioner's request that the probationary period be reduced and, further, took the position that petitioner successfully completed only one year of retraining at NYU. In the interim period petitioner sought approval from OPMC to work under the supervision of Paul Spurgas, a neurosurgeon in Schenectady County, in hopes of fulfilling the remaining portion of his probation requirement; OPMC notified the upstate neurosurgeon in January 1994 that his proposal, in accordance with the terms of petitioner's probation, was approved. However, in March 1994 Kevin Roe, associate counsel for OPMC, notified petitioner that the Schenectady program did not fulfill the requirements set forth in the terms of his probation.

In May 1994 OPMC commenced the instant violation of probation proceeding against petitioner. The notice specifically charged that petitioner violated paragraph 1 (e) of the terms of

probation by failing to diligently pursue a course of retraining in neurosurgery; the charge was premised upon the belief that petitioner could not complete the remaining one year of retraining prior to the end of the term of probation. A hearing was held before a Hearing Committee of respondent State Board for Professional Medical Conduct (hereinafter Hearing Committee). OPMC presented testimony from one witness, Dogali; petitioner presented his own testimony and testimony from Wisoff, Spurgas and petitioner's father, William Kite, a retired board-certified neurosurgeon.

In December 1994 the Hearing Committee found that petitioner violated the terms of his probation. Petitioner's license was suspended; however, the Hearing Committee stayed the suspension to enable petitioner to engage in one year of retraining. Petitioner was also placed on probation for five years. Pursuant to Public Health Law § 230-c, the Bureau of Professional Medical Misconduct appealed and sought review by respondent Administrative Review Board for Professional Medical Conduct (hereinafter the ARB); petitioner cross-appealed. The ARB sustained the Hearing Committee's determination that petitioner had violated the terms of his probation; however, the ARB overruled the Hearing Committee's penalty and revoked petitioner's license to practice medicine. Petitioner then commenced the instant CPLR article 78 proceeding to review the ARB's determination.

Initially, we reject petitioner's contention that he was denied proper notice of the charges. This contention is based upon OPMC's service of notice of a violation of probation proceeding pursuant to Public Health Law § 230 (19); petitioner contends, however, that at the hearing OPMC proceeded upon a theory of medical misconduct, pursuant to Public Health Law § 230 (10). The record reveals that OPMC's May 1994 notice is clearly marked *"Notice of Violation of Probation"* (emphasis supplied). Although testimony was elicited at the hearing regarding petitioner's alleged medical misconduct, it was introduced as evidence that petitioner violated the terms of probation, i.e., misconduct which resulted in his removal from service in the program at NYU. Petitioner's removal and subsequent resignation from NYU were key factors in the adverse finding pursuant to Public Health Law § 230 (19). In our view, the focus of the hearing was solely on petitioner's alleged failure to comply with the terms of probation relating to the successful completion of his retraining. Moreover, petitioner was fully apprised of OPMC's reliance on the alleged medical misconduct as a factor in the probation violation proceeding prior to the hearing and was given ample opportunity to cross-examine Dogali.

Next, we reject petitioner's contentions that the ARB's determination was arbitrary and capricious, affected by an error of law or procedure, and was an abuse of discretion. In our view, the record amply supports the ARB's decision. Petitioner willfully disregarded his supervisor's requests placing patients at risk numerous times. The harm caused to patients was well documented and these injuries may well have been prevented. Compounding the concerns of the ARB were petitioner's own statements, which indicated a lack of remorse and poor attitude toward his opportunity at reestablishing the full status of his license. Petitioner viewed his retraining with anger, essentially as a prison sentence.

Further, "[i]t is well-settled law that the ARB is authorized to impose a sanction which it deems to be appropriate" (*Matter of Ross v New York State Dept. of Health*, 226 AD2d 863, 865; *see, Matter of Spartalis v State Bd. for Professional Med. Conduct*, 205 AD2d 940, *lv denied* 84 NY2d 807). The ARB may substitute its own determination for that of a Hearing Committee by imposing either a more lenient sanction or, as herein, a harsher sanction (*see, Matter of Wapnick v New York State Bd. for Professional Med. Conduct*, 203 AD2d 728, 729; *Matter of Bogdan v New York State Bd. for Professional Med. Conduct*, 195 AD2d 86, *appeal dismissed, lv denied* 83 NY2d 901). The ARB's determination will not be overturned unless it is found to be arbitrary, capricious or beyond its authority (*see, Matter of Amato v State of N. Y. Dept. of Health*, 229 AD2d 752, 753; *Matter of Spartalis v State Bd. for Professional Med. Conduct, supra; Matter of Wapnick v New York State Bd. for Professional Med. Conduct, supra*).

Here, the record reveals that petitioner failed to act appropriately under the terms of his probation, allowed patients to be put at risk because of his unwillingness to follow direct orders of his supervising physician and, most significantly, failed to complete his retraining within the required period. Notably, the ARB determined that the Hearing Committee which placed petitioner on probation in 1991 had found petitioner to be seriously lacking in several areas and permitted him to continue practicing only if he successfully completed retraining. In our view, the ARB's determination that petitioner cannot benefit from retraining was rationally based and the revocation is not shocking to one's sense of fairness (*see, Matter of Brigham v DeBuono* 228 AD2d 870, 874-875; *Matter of Mansur v State of N. Y. Dept. of Health Bd. for Professional Med. Conduct*, 223 AD2d 774, 776).

We have reviewed petitioner's remaining procedural conten-

tions, and his request for remittal for a further fact-finding proceeding, and find them to be without merit.

Cardona, P. J., White, Peters and Carpinello, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.