OPINION OF THE COURT
Joseph J. Maltese, J.
The issue presented is whether an agreement making a nonprofessional spouse a 51% partner in a veterinary practice is enforceable as an agreement or binding under equitable distribution in a divorce.
FACTS
The plaintiff and defendant were married on April 2, 1980 in Lugano, Switzerland, and were married again on September 10, 1980 in the State of New York. There are two children born of the marriage.
The plaintiff, John F. Sangiorgio, received a doctor of veterinary medicine degree in Milan, Italy, in 1980. In 1981 he received a license as a doctor of veterinary medicine in New York and established his veterinary practice from his home in Brooklyn that year. At that time Dr. Sangiorgio primarily did house calls. In 1986 the plaintiff set up a veterinary office in Staten Island. He has practiced in his present location at the Emergency Veterinary Center on Clove Road, Staten Island, New York, for approximately four years.
Although the plaintiff incorporated as the Veterinary Emergency Center, P. C. in 1991, he operated his practice as a sole proprietorship doing business as Veterinarian Emergency Center until January 1996, when the practice actually started conducting its financial affairs as the professional corporation.
*627 The defendant wife asserts that the plaintiff husband told her that she was an equal partner in the veterinary practice. The husband denies that she was a partner and states she was only an employee of the practice. Both parties agree that no partnership agreement or shareholder’s agreement was ever written or recorded. They also agreed that the wife, who obtained a license as a veterinary technician during the marriage, worked in the practice for a salary of between $500 to $700 per week.
On February 13, 1992, the parties and the wife’s father, Pietro Albanese, signed an agreement drafted by Mr. Albanese’s attorney. Neither the plaintiff nor the defendant were represented by an attorney. The agreement stated in part that:
"Albanese gave $15,000 to Helen for utilization by her in her Veterinary Emergency Center business, a partnership owned equally by Helen and John.
"The aforesaid business is being operated solely for the practice of veterinary medicine and is a partnership which was formed by Helen and John under d/b/a known as Veterinary Emergency Center * * *
"The $15,000 gifted by Albanese to Helen is to be utilized solely and exclusively for the expansion of this business.
"That in consideration for the receipt of the * * * money, Helen and John do hereby agree to modify their partnership agreement in the following manner: That John shall transfer, sell and assign all of his right, title and interest in and to one (1%) percent of that business .partnership known as Veterinary Emergency Center to Helen so as to cause Helen to become a fifty-one (51%) percent owner of the partnership and receive the benefits that 51% ownership shall provide.
"That Helen and John do further agree that they shall not modify or change this percentage of ownership between themselves for a period not to exceed five years from the date hereof * * *
"That it is further understood and agreed that Helen and John shall make the appropriate gift tax returns required under State and Federal tax laws at their own cost and expense.”
On May 12, 1993 the husband veterinarian sued the wife for divorce.
DISCUSSION
The public policy of this State, as manifested in the statutes governing professionals, such as doctors of veterinary medicine, *628 prohibits nonveterinarians from being partners or joint shareholders in professional corporations established for the practice of veterinary medicine. Education Law § 6706 (1) states that: "No business corporation, other than a professional service corporation organized under the business corporation law, shall hereafter be organized for the practice of veterinary medicine-, no business corporation, other than a professional service corporation, hereafter organized shall be granted a license to practice veterinary medicine; and no business corporation, other than a professional service corporation, hereafter organized shall provide veterinary medical services.” (Emphasis supplied.)
Under Business Corporation Law § 1507, "[a] professional service corporation may issue shares only to individuals who are authorized by law to practice in this state a profession which such corporation is authorized to practice”.
Business Corporation Law § 1507 further states: "All shares issued, agreements made, or proxies granted in violation of this section shall be void” (Emphasis supplied.)
Additionally, Education Law § 6700 states that the "general provisions for all professions contained in article [130]” apply to the practice of veterinary medicine. Section 6509-a of the Education Law, which is contained in article 130, prohibits fee sharing and profit sharing between the professional and the nonprofessional. Education Law § 6509-a "does not allow the sharing of fees between professionals and nonprofessionals” (Matter of Okereke v State of New York, 129 AD2d 373, 376 [3d Dept 1987]). It is considered unprofessional conduct to "[permit] any person to share in the fees for professional services, other than: a partner, employee, associate in a professional firm or corporation, professional subcontractor or consultant authorized to practice the same profession, or a legally authorized trainee practicing under the supervision of a licensed practitioner” (8 NYCRR 29.1 [b] [4]; emphasis supplied).
The purpose of these statutes is to protect the public from unlicensed nonprofessionals who may be operating a professional practice or business. Therefore, the agreement between the plaintiff, defendant and the defendant’s father is void as being against the public policy of this State.
However, the agreement is evidence of the $15,000 contribution made toward the practice for equitable distribution purposes by or on behalf of the nonprofessional spouse. A professional practice established during marriage and before the commencement of the action is marital property and *629 subject to equitable distribution (Litman v Litman, 93 AD2d 695 [2d Dept 1983], affd 61 NY2d 918 [1984]).
In determining an equitable disposition of property a court must consider, among other things, "any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party.” (Domestic Relations Law § 236 [B] [5] [d] [6].)
In the case at bar, Helen Sangiorgio and her father contributed directly to the establishment of the plaintiffs veterinary practice. It was established that her father did give $15,000 to the plaintiff on behalf of his daughter to expand the veterinary center. Moreover, it has been demonstrated that the defendant wife did work in the veterinary practice as a licensed veterinary technician for which she received a salary of between $500 to $700 per week. It has never been established that the defendant was underpaid for services or that she was overpaid for her services. Therefore, this court cannot assess any value to her labor in the practice other than that of another employee, who by her own admissions was only working on call when needed for which she was paid.
Accordingly, her efforts in enhancing the establishment and the expansion of the practice with her husband, in addition to her being the plaintiffs wife and mother of their children, has been established to some degree.
The defendant hired Remen & Remen of Manassas, Virginia, who by their letterhead claim to provide veterinary practice transfers, to prepare an appraisal of the plaintiffs practice. It is clear that the value of an interest in a professional practice is measured by the value of the practice to another professional (Shoenfeld v Shoenfeld, 168 AD2d 674 [2d Dept 1990]). The appraisal states that the Veterinary Emergency Center is valued at $658,000 as of April 11, 1996. By stipulation of the parties, the evaluation was admitted into evidence conditionally to obviate the need of Remen & Remen testifying as to foundational questions.
However, the value of the practice should be calculated at the time the action was commenced in May of 1993. The data relied upon by Remen & Remen were the 1994 income tax return, profit and loss from business statements, schedule C form 1040 and the 1993 and 1992 profit and loss from business statements. The 1994 gross receipts were $685,055, while 1993 *630 receipts reflect $492,398 or 71.9% of the 1994 gross receipts utilized. If all other factors were equal the valuation of the practice in 1993 would be 71.9% of $658,000 or $473,102, using the defendant’s appraiser’s methodology.
This court finds that the plaintiff’s accountant who testified has raised legitimate objections to the methodology of the calculation method employed by Remen & Remen. The value of the practice should be a factor of the net income, rather than capitalizing such items as unverified inventory stockpiles of medicine and the add back of personal wages, which were estimated as a percentage of gross, and the utilization of equipment leases. The plaintiff’s accountant claims to have valued the practice under what he stated were Internal Revenue Service (IRS) Code (26 USC) § 6062(?) capitalization formulas at $100,000. However, the accountant has neglected to demonstrate by either a report or through testimony how he arrived at that figure. In addition, the IRS Code section referred to is inapplicable. Moreover, the accountant of the plaintiff is hardly an unbiased witness when reviewing his own numbers. Consequently, this court finds that it cannot accept the plaintiff’s accountant’s valuation. The court thereby adopts the defendant’s appraisal adjusted by the court to conform to the year of the commencement of this action.
While Helen Sangiorgio did assist in the operation of her husband’s practice, she did receive a salary for the work she performed. There has been no testimony which asserts that the funds she received were inadequate for her services directly to the practice. However, as a spouse, homemaker and mother, as well as a financial contributor to the practice, she is entitled to a distributive award. This court is not bound by the 51% agreement which is void and grants the defendant a distributive award of 331h% of the value of the practice, to wit: $163,968 ($492,398 x .333 = $163,968). Since the plaintiff may be unable to pay the distributive award of $163,968 in full at this time, that sum will be amortized over 15 years at 9% payable monthly in the sum of $1,663.08. At any time the plaintiff may prepay the remaining principal balance of the distributive award without further interest.
It should be noted that although a license to practice a profession acquired during marriage is marital property subject to equitable distribution (O’Brien v O’Brien, 66 NY2d 576 [1985]), no value of the veterinarian license was presented to this court. Moreover, the plaintiff has been in a veterinary practice since 1981 and courts must "ensure that the monetary *631 value assigned to the license does not overlap with the value assigned to other marital assets that are derived from the license such as the licensed spouse’s professional practice” (McSparron v McSparron, 87 NY2d 275, 286 [1995]). Therefore, the value of the veterinary license is a moot issue.
The doctor of veterinary medicine degree was earned just prior to the marriage and is deemed separate property, not subject to equitable distribution.
SUMMARY
Accordingly, this court awards the defendant a distributive award of $163,968, which represents 331/3 % of the 1993 (date of commencement) value of plaintiff’s veterinary practice payable monthly over 15 years at 9% interest per year for a monthly payment of $1,663.08. Since the defendant is capable of working in her chosen field as a licensed veterinary technician, and due to the size of the distributive award, no award of maintenance or counsel fees has been granted. Child support was awarded the defendant in accordance with the Child Support Standards Act at $1,588 per month. The plaintiff must also provide health insurance for the children and pay for the elementary school tuition of his daughter, as well as his pro rata share of the unreimbursed medical expenses. The plaintiff father is also directed to pay pro rata college tuition for the two daughters, limited by the tuition then charged by the State or City Universities of New York.