■ In the Matter of STEPHEN LOMBARDO, Petitioner, v BARBARA DEBUONO, as Commissioner of the State of New York Department of Health, et al., Respondents. (Proceeding No. 1.) In the Matter of STEPHEN J. LOMBARDO, Appellant, v NEW YORK STATE DEPARTMENT OF HEALTH, Respondent. (Proceeding No. 2.) [650 NYS2d 423] —Peters, J. Proceeding (No. 1) pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Administrative Review Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

Appeal (transferred to this Court by order of the Appellate

Division, First Department), by permission, from an order of the Supreme Court (Friedman, J.), entered October 11, 1994 in New York County, which, in a proceeding (No. 2) pursuant to CPLR article 23, denied petitioner's application to compel respondent to comply with an administrative subpoena duces tecum.

Petitioner, a physician specializing in the area of internal medicine, was investigated by the Office of Professional Medical Conduct (hereinafter OPMC) in 1990. By letter dated September 7, 1990, petitioner was advised that insufficient evidence was found to sustain a charge of professional misconduct. With the investigation discontinued and the case dismissed, the letter informed petitioner that since "a medical misconduct investigation is not a disciplinary proceeding", confidentiality precludes revealing the source of the allegations.

On August 2, 1994, petitioner was again charged with professional misconduct, now by the State Board for Professional Medical Conduct, with nine specifications stemming from his treatment of three female patients (hereinafter patients A, B and C).[1] As to patient A, a 27-year-old nursing student, it was alleged that during the course of a purported physical examination for school, petitioner, while standing behind her, abruptly and without previously announcing his intention to do so, lifted her shirt above her breasts and unclipped her strapless bra, causing it to fall on her lap. Despite patient A telling him that her gynecologist would perform the breast examination required by the school health form, petitioner examined her breasts without ever providing an examination gown. As to patient B, a 28-year-old registered nurse, it was alleged that during a breast examination which was part of her employee health examination, petitioner placed her in various positions, examining her breasts for approximately 10 to 15 minutes, during which time he stared into her eyes. As to patient C, a 14-year-old girl, it was alleged that in treating a pectoral skin rash, petitioner rubbed medicated cream onto her breasts (November 23, 1988), rubbed medicated cream onto both breasts and nipples for a period of several minutes (November 30, 1988), and rubbed medicated cream onto both

---

1. These charges alleged that petitioner practiced medicine by conduct evincing moral unfitness as to patients B and C (see, Education Law § 6530 [20]), practiced the profession fraudulently as to patients B and C (see, Education Law § 6530 [2]), willfully harassed, abused or intimidated, physically and/or verbally, patients A, B and C (see, Education Law § 6530 [31]), failed to maintain accurate records as to patient C (see, Education Law § 6530 [32]), and performed professional services not duly authorized by patient A (see, Education Law § 6530 [26]).

breasts, touched her abdomen and moved her underwear, exposing her pubic hair, concluding with an open-mouthed kiss on her lips (December 8, 1988). It was further alleged that petitioner made sexually inappropriate comments to patient C during some or all of these visits and failed to record, during each visit, that he rubbed such cream onto her breasts and/or touched her abdomen.

After patient C testified before a Hearing Committee of the State Board for Professional Medical Conduct, petitioner served a subpoena duces tecum upon the Department of Health for the production of its entire investigative file concerning patient C. Upon the Department's refusal to comply, petitioner commenced proceeding No. 2, pursuant to CPLR 2308 (b), to compel compliance. The application was denied by Supreme Court.

The Hearing Committee found, after an evidentiary hearing, that petitioner was guilty of practicing medicine by conduct which evinced moral unfitness,[2] had practiced fraudulently as alleged,[3] willfully harassed, abused or intimidated all patients as alleged, failed to maintain accurate records as alleged, and performed professional services not duly authorized as alleged. It ordered that petitioner's license be revoked and that upon any application for reinstatement, it be accompanied by a complete psychiatric evaluation. Upon appeal, the Administrative Review Board for Professional Medical Conduct (hereinafter ARB) sustained the determination and petitioner sought review by the commencement of proceeding No. 1. Upon the denial of petitioner's application for the production of the Department's investigative file concerning patient C, proceeding No. 2 was transferred to this Court to be heard with proceeding No. 1.

Petitioner's first contention is that OPMC was precluded from bringing charges concerning patient C since these allegations were the basis of the case which OPMC dismissed in 1990. We disagree. Clearly, the doctrine of res judicata has been found to be applicable to agency determinations when such agency is acting in a quasi-judicial capacity (*see, Werner v State of New York*, 53 NY2d 346, 353; *Matter of Pannone v New York State Educ. Dept.*, 54 AD2d 1014, 1015, *lv denied* 40 NY2d 808). Yet, where, as here, the agency does not have "statutory authority to act adjudicatively" (*Allied Chem. v Niagara Mohawk Power Corp.*, 72 NY2d 271, 276, *cert denied* 488 US 1005), the proceeding cannot be deemed to have been quasi-judicial.

---

2. Except regarding the November 23, 1988 incident.

3. Except regarding the November 23, 1988 incident and making sexually suggestive comments to patient C.

OPMC is only authorized to determine whether a hearing was warranted and whether charges should be proffered (*see*, Public Health Law § 230 [10] [a] [iv]). Since only a Hearing Committee is vested with the adjudicative power to determine petitioner's guilt or innocence on charges (*see*, Public Health Law § 230 [10] [e]; *Sherman v Office of Professional Med. Conduct*, 137 Misc 2d 765), we do not find the application of such doctrine applicable.

We further find that Supreme Court properly denied petitioner's application to compel the production of the Department's entire investigative file concerning patient C. Pursuant to Public Health Law § 230 (10) (k), both a petitioner and the Supreme Court lack authority to issue an administrative subpoena (*see*, *Matter of Anonymous v State Dept. of Health*, 173 AD2d 988, 989). Even acknowledging the limited exception to the statutory requirements of confidentiality found in Public Health Law § 230 (11) (a) carved out by *Matter of McBarnette v Sobol* (83 NY2d 333), we decline to extend such holding to encompass information, reports or complaints of nonwitnesses. In so finding, we note that the Department did, in fact, disclose certain information regarding the investigation which included all memoranda of interviews with patient C, its internal information concerning such patient and all of her prior statements.

As to the ARB determination, we find that the record fully supports the determination. "[O]ur inquiry is limited to whether the determination was made in violation of lawful procedure, was affected by an error of law, was arbitrary and capricious or an abuse of discretion" (*Matter of Minielly v Commissioner of Health of State of N. Y.*, 222 AD2d 750, 751; *see*, *Matter of Chua v Chassin*, 215 AD2d 953, 954, *lv denied* 86 NY2d 708), with all credibility issues and the weighing of expert testimony left within the sole province of the administrative fact finder (*see*, *Matter of Chua v Chassin*, *supra*, at 955).

The record reflects that patient A communicated that her gynecologist would perform the breast examination. Petitioner admits that he nonetheless lifted up her shirt insensitively and unclipped her strapless bra, without ever warning her. While he maintained that he did not want to indicate on her school form that he performed a breast examination without having done so, his testimony confirmed that the school form indicated that he performed anal and rectal examinations when he had not, in fact, done so.

As to patient B, a registered nurse, her testimony revealed

that petitioner stayed in the room and helped her remove her gown while she took off her bra in preparation for the extended breast examination. Although petitioner disputed her recollection of the length of such examination and testified that he generally looked into a patient's eyes to see if discomfort is felt, his own expert testified that he would only intermittently look into a patient's eyes to notice discomfort. Such expert further testified that up to four minutes would not be considered an excessive length for a breast examination. We find that the combination of the amount of time reported by patient B for the completion of the exam, coupled with petitioner's viewing of her removing her gown and bra to expose her breasts, with the consistent stare into her eyes, fully supported the conclusion reached.

Reviewing patient C's testimony, that of her school counselor to whom she reported the incident, as well as that of the Assistant District Attorney who worked on the criminal investigation, we find the ARB's determination fully supported. Inconsistencies in such testimony regarding whether petitioner "tried" to kiss her or whether he had actually kissed her simply presented a credibility issue best resolved by the administrative fact finder (*see, Matter of Minielly v Commissioner of Health of State of N. Y., supra*). Finally, noting that the rules of evidence are not applicable to administrative hearings (*see, Matter of Swick v New York State & Local Employees' Retirement Sys.*, 213 AD2d 934, 935; *Sherman v Office of Professional Med. Conduct, supra*, at 767; *see also*, State Administrative Procedure Act § 306 [1]), we find that even if the Hearing Committee should not have allowed the testimony of both the counselor and the Assistant District Attorney that patient C appeared credible upon their interviews, there was sufficient other evidence to support the ARB's determination.

Accordingly, we do not find the penalty of revocation, under these circumstances, to be excessive or disproportionate or "so incommensurate with the offense as to shock one's sense of fairness" (*Matter of Chua v Chassin*, 215 AD2d 953, 956, *lv denied* 86 NY2d 708, *supra*; *see, Matter of Minielly v Commissioner of Health of State of N. Y., supra*, at 751).

We hereby confirm the determination in proceeding No. 1 and affirm the order in proceeding No. 2.

Cardona, P. J., White, Spain and Carpinello, JJ., concur. Adjudged that the determination is confirmed in proceeding No. 1, without costs, and petition dismissed. Ordered that the order is affirmed in proceeding No. 2, without costs.

