**Moshe HACHAMOVITCH, M.D., Plaintiff–Appellant,**

**v.**

**Barbara A. DeBUONO, as Commissioner of Health, NYS Dept. of Health; Kathleen Tanner, as Director of the Office of Professional Medical Conduct, NYS Dept. of Health; Charles Vacanti, M.D., as Chairman of the Board for Professional Medical Conduct, NYS Dept. of Health; Jonathan M. Brandes, as Administrative Law Judge, Defendants–Appellees.**

**Docket No. 97–9065**

United States Court of Appeals, Second Circuit.

Argued April 21, 1998.

Decided Sept. 16, 1998.

---

John F. Shea, III, Riverhead, NY (Stephen B. Latham, David M. Dubin, Twomey, Latham, Shea & Kelley, LLP, on the brief), for Plaintiff–Appellant.

Michael S. Popkin, Assistant Attorney General, New York, NY (Dennis C. Vacco, Attorney General, John W. McConnell, Deputy Solicitor General, Thomas D. Hughes, Assistant Solicitor General, Barbara K. Hathaway, Assistant Attorney General, on the brief), for Defendants–Appellees.

Before: WALKER, JACOBS and CALABRESI, Circuit Judges.

JACOBS, Circuit Judge:

Following state proceedings in which his medical license was suspended, plaintiff-appellant Moshe Hachamovitch, M.D., sued officials of New York State under 42 U.S.C. § 1983, alleging that certain physician disciplinary procedures are so deficient as to violate due process. The United States District Court for the Southern District of New York (Wood, *J.*) refused to exercise jurisdiction, relying on the *Rooker–Feldman* doctrine and *Burford* abstention. We conclude that the district court was under an obligation to exercise its jurisdiction over one claim but not the other, and we therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

This case arises out of a suspension of Dr. Hachamovitch's license to practice medicine by New York's Board for Professional Medical Conduct ("BPMC") on the ground that he had falsified an operating report by deliberately and substantially understating the quantity of blood lost by a patient who died following an abortion.

Dr. Hachamovitch's license was suspended for one year, but the suspension was permanently stayed for eleven months, so that effectively the suspension is only for one month. Dr. Hachamovitch has yet to serve the suspension, because stays imposed by various administrative and judicial bodies or agreed to by the parties have thus far postponed the sanction.

Some time after the BPMC concluded the proceedings before it, Dr. Hachamovitch discovered evidence (in connection with a civil malpractice case involving the same patient) that he claimed was exculpatory and sought to reopen the disciplinary proceed-

ings. The ALJ determined that the New York state regulatory scheme did not permit the reopening of a concluded proceeding; Dr. Hachamovitch petitioned for a writ of mandamus, but the New York State Appellate Division, Third Department, upheld the administrative law judge's ruling that the New York regime conferred no power on either the agency or the court to reopen a closed proceeding; the court then indicated, however, that the new evidence presented by Dr. Hachamovitch did not warrant reopening the hearing, even if the court had the power to order it.

Appellees are Barbara DeBuono, the Commissioner of New York's Department of Health ("DOH"); Kathleen Tanner, the director of BPMC; Charles Vacanti, the chairman of the BPMC; and Jonathan Brandes, the administrative law judge ("ALJ") who presided over Hachamovitch's professional disciplinary hearing.

### A. New York's Framework for Licensing and Disciplining Physicians

The BPMC is an administrative body created by Public Health Law § 230 that investigates and imposes discipline for professional misconduct as defined by the New York Education Law §§ 6530 and 6531. The BPMC, "by the director of the office of professional medical conduct,"[1] is required to investigate all complaints of professional misconduct, and has the power to open such investigations on its own initiative. N.Y. Pub. Health Law § 230(10)(a) (McKinney 1990 & 1997–98 Supp.). Once the case is referred to an investigative committee of three BPMC members, those individuals review evidence and decide whether a hearing is warranted. If the investigative committee orders a hearing, counsel for the BPMC is directed to prepare formal charges detailing the "substance of the alleged professional misconduct and [stating] clearly and concisely the material facts but not the evidence by which the charges are to be proved." *Id.*

§ 230(10)(b). Upon the filing of formal charges, Public Health Law § 230(10)(a)(iv) authorizes a widening of the investigation to include a comprehensive review of the physician's patient records. The hearing is conducted by a three-member Hearing Committee, consisting of two physicians and a lay member. *Id.* § 230(6). An ALJ presides over each hearing as a non-voting member and, among other functions, rules on objections. *Id.* § 230(10)(e). The Hearing Committee must present its determinations in writing, with findings of fact and conclusions of law. *Id.* § 230(10)(g).

Review of the Hearing Committee's determination is available, upon request, by the Administrative Review Board ("ARB") of the BPMC. *Id.* § 230(10)(i). An appeal to the ARB stays the imposition of penalties imposed by the Hearing Committee, except for annulment, suspension without stay, or revocation. *See id.* § 230–c(4). Additionally, either after review by the ARB or instead of an appeal to the ARB, a party may seek judicial review of the Hearing Committee's determination by the New York State Appellate Division, Third Department, via an Article 78 petition. A petitioner can secure a stay of any penalties pending this review as well, by showing "a substantial likelihood of success" of the appeal. *Id.* § 230–c(5).

Although most of the regulations and procedural protections afforded to physicians detailed above are of long standing, a significant change in the regulatory framework was made in 1991. On July 26, 1991, chapter 606 of the Laws of the State of New York transferred responsibility for medical disciplinary proceedings from the Education Department's Board of Regents to the Department of Health. The procedures provided for by the Board of Regents permit reconsideration of a disciplinary decision after the close of the hearing. *See* New York Comp.Codes R. & Regs., tit. 8, § 3.3(f). This reopening procedure is still available to professionals who

---

**1.** The office of professional medical conduct ("OPMC") handles the early stages of the investigation before the matter is referred to an investigative committee of the BPMC. The director of the OPMC and a majority of the investigative committee then determine if a hearing is war-

ranted. Thereafter, the BPMC takes over responsibility for the disciplinary proceedings. N.Y. Pub. Health Law § 230(10); *see Lombardo v. DeBuono*, 233 A.D.2d 789, 650 N.Y.S.2d 423 (3d Dep't 1996).

continue to be licensed by the Board of Regents, including landscape architects, social workers, engineers, architects and accountants. But the Department of Health had no such procedure in place prior to the 1991 transfer of responsibility, and (whether by oversight or design) has not adopted a procedure for the reconsideration or reopening of a closed disciplinary proceeding.

## B. Dr. Hachamovitch's Disciplinary Proceedings

The investigation of Dr. Hachamovitch was triggered by the death of a patient following an abortion on October 20, 1990. Her death was caused by an undetectable condition that is virtually always fatal and was not the result of any lapse in Dr. Hachamovitch's standard of care. The investigation focused instead on whether Dr. Hachamovitch's patient notes (and report) fraudulently understated the amount of blood lost prior to the patient's death. (A further charge, of which he was absolved on appeal, accused Dr. Hachamovitch of falsifying his notes concerning the administering of oxygen to the patient.) Among those in a position to observe the amount of blood loss were the four paramedics who went to Dr. Hachamovitch's office in response to his call for emergency assistance.

Hachamovitch attempted to obtain the EMS records relating to this call. EMS refused to produce them; Hachamovitch obtained a subpoena for the records from the New York State Supreme Court, Queens County. OPMC intervened, obtained the file, and produced it to Hachamovitch in June 1992. Documents in the file identified the EMS personnel by employee number only.

In July 1992, Hachamovitch sought and obtained a subpoena duces tecum for the OPMC's investigative file. But the court imposed the limitation that the subpoena be "subject to all confidentiality protection accorded by lawful mandate." That was no small proviso in light of the state's Public Health Law:

The files of the office of professional medical conduct relating to the investigation of possible instances of professional misconduct shall be confidential and not subject to disclosure at the request of any person,

except as provided by law in a pending disciplinary action or proceeding.

N.Y. Pub. Health Law § 230(10)(a)(v). The Department of Health's Uniform Hearing Procedures provide that in a proceeding that may result in a license revocation, disclosure is limited solely to: (1) names of witnesses (but not a summary of their anticipated testimony); (2) a list of documentary evidence; (3) photocopies of documentary evidence; and (4) a brief description of physical or other evidence that cannot be photocopied. N.Y. Comp.Codes R. & Regs., tit. 10, § 51.8(b) (1980). In other proceedings, the' regulations prohibit all disclosure. *Id.* § 51.8(a).

In November 1992, Hachamovitch requested that the BPMC or the OPMC provide him with prehearing disclosure, as provided in the DOH regulations, as well as any exculpatory evidence in the BPMC's possession. The BPMC's list of witnesses and exhibits included the names of the four paramedics. In response to the request for exculpatory materials, OPMC stated that it would provide no disclosure unless explicitly required by DOH regulations.

At the outset of the hearing, the ALJ ruled that the subpoena did not require disclosure of the investigative file except as permitted by DOH regulations, and that DOH regulations did not allow the disclosure. But the ALJ further determined that Hachamovitch could seek further enforcement of the subpoena from the court that had issued it.

Two of the four paramedics who attended the patient testified at the hearing; the other two did not.

At the close of the hearing, the BPMC Hearing Committee found that the doctor had committed misconduct in recording the extent of the patient's blood loss and in the administration of oxygen, and determined to suspend Hachamovitch's license for one year, but permanently stayed the suspension for eleven months. Hachamovitch appealed to the Appellate Division, which upheld the Hearing Committee's finding as to the blood loss, but reversed as to the administration of oxygen. Because it had sustained only one of the Hearing Committee's determinations,

the Appellate Division remanded for a reconsideration of the appropriate sanction. While the remand was pending, Hachamovitch filed a motion for leave to appeal to the New York Court of Appeals all issues not related to the remand; leave to appeal was denied. Upon the remand, in October 1994, the Hearing Committee decided that a one-month suspension was the appropriate penalty notwithstanding the narrowed scope of the misconduct. Hachamovitch appealed this decision to the ARB, a step which automatically stayed the imposition of the penalty.

## C. The Motion to Reopen for Newly Discovered Evidence

The patient's survivors later brought a malpractice suit against Dr. Hachamovitch, and in the course of discovery in that suit, testimony was taken from the two paramedics who were listed as witnesses in the administrative hearing but were not called. In their depositions, the paramedics did not testify that they had seen a large quantity of blood when they arrived at the scene, an omission which undermines the accusations relating to Hachamovitch's notes on the patient's blood loss. Hachamovitch concluded from the absence of testimony on this point that the DOH had exculpatory information in its possession in the form of notes taken by a BPMC investigator during interviews with the nontestifying paramedics. The district court reviewed the notes in camera, but the notes have not been provided to this Court.

In November 1994, Hachamovitch's counsel asked the ALJ to reopen the hearing in light of the deposition testimony of the paramedics who had not testified at the hearing. Hachamovitch made a formal motion to the BPMC requesting the same relief. In both requests, Hachamovitch cited his pre-hearing demand for disclosure of exculpatory information.

In December 1994, Hachamovitch petitioned the Supreme Court of New York, New York County, under Article 78, seeking a writ of mandamus (i) directing the BPMC and the ALJ to decide Hachamovitch's motions to reopen his hearing, and (ii) directing the OPMC to provide Hachamovitch with a copy of all exculpatory materials in its possession on the ground that "by withholding potentially exculpatory material, OPMC and the administrative prosecutor ... violated [Hachamovitch's] right to due process." The petition also sought a stay of the suspension until 10 days after the determination of the motion to reopen. Hachamovitch won a stay of the Hearing Committee's penalty, and then withdrew his ARB appeal from the Hearing Committee's determination.

The portion of the petition seeking to compel issuance of a decision by the ALJ was mooted in January 1995 when the ALJ denied reopening of the hearing. The ALJ found that he lacked the power to reopen the hearing under the duties delegated to him by the Commissioner of Health; he believed that Hachamovitch's request could "only be granted by a Court."

The BPMC opposed the remainder of the mandamus petition on the ground that the New York County Supreme Court lacked jurisdiction over the issue of reopening the hearing, because judicial review of the BPMC's decisions, pursuant to New York Public Health Law § 230–c, was within the exclusive jurisdiction of the Appellate Division. In February 1995, the New York County Supreme Court dismissed to allow Hachamovitch to refile his petition in the Appellate Division within ten days.

Hachamovitch timely filed an Article 78 petition in the Appellate Division, Third Department. That court stayed the suspension pending briefing, but denied Hachamovitch's request for a stay pending appeal. The Appellate Division ruled in May 1996 that mandamus was not the appropriate remedy for Hachamovitch, because in the absence of any statutory or regulatory provision granting Hachamovitch the right to reopen a closed proceeding upon newly discovered evidence, the BPMC had no clear legal duty to act upon Hachamovitch's application. Alternatively, the court found that the petition was meritless:

> Moreover, even if respondents could be compelled to consider petitioner's application, petitioner has not satisfied his burden of showing, among other things, that the proffered evidence was likely to have affected the outcome of the proceeding and

could not have been obtained prior to the conclusion of the evidentiary hearing in the exercise of due diligence.

*In re Hachamovitch v. Office of Prof'l Med. Conduct,* 227 A.D.2d 686, 687, 641 N.Y.S.2d 757, 759 (3d Dep't 1996). As to Hachamovitch's claim that exculpatory evidence was withheld, the court ruled that the claim was: (1) unpreserved, because Hachamovitch had failed to raise it in his first Article 78 petition; and (2) meritless, because the right to exculpatory information afforded to defendants in criminal proceedings does not extend to administrative proceedings. The New York Court of Appeals denied Hachamovitch leave to appeal in November 1996.

While his Article 78 proceeding was pending, Hachamovitch filed the present suit claiming that the DOH regulatory scheme violated due process insofar as it (1) allowed the DOH to withhold exculpatory evidence; and (2) barred the reopening of proceedings. The parties agreed to stay the suspension until the district court ruled on Hachamovitch's request for a preliminary injunction. The district court held that the *Rooker–Feldman* doctrine and *Burford* abstention doctrine constrained it from considering Hachamovitch's claims, but stayed the suspension pending this appeal.

## DISCUSSION

### I.

### The Standard of Review

■ Generally, we review a district court's decision to abstain on *Burford* grounds for abuse of discretion, but the scope of that discretion is narrowed by the federal court's obligation to exercise its jurisdiction in all but the most extraordinary cases:

Although the standard of review of a district court's decision to abstain is often described as an abuse-of-discretion standard, *see, e.g., Bethp[h]age Lutheran Service, Inc. v. Weicker,* [965 F.2d 1239, 1244 (2d Cir.1992)], we have noted that in the abstention area that standard of "review is somewhat more rigorous," *id.* Because "we are considering an exception to a court's normal duty to adjudicate a controversy properly before it," the district

court's " 'discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved.... Thus, ... there is little or no discretion to abstain in a case which does not meet traditional abstention requirements.' " *Id.* at 1244–45 (quoting *Mobil Oil Corp. v. City of Long Beach,* 772 F.2d 534, 540 (9th Cir.1985) (inner internal quotation marks omitted)). "The underlying legal questions ... are subject to plenary review." *Sheerbonnet, Ltd. v. American Express Bank Ltd.,* 17 F.3d 46, 48 (2d Cir.), *cert. denied,* [513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 23 (1994). ] ....

*In re Joint Eastern & Southern District Asbestos Litigation,* 78 F.3d 764, 775 (2d Cir.1996). In review of decisions to abstain, there is little practical distinction between review for abuse of discretion and review *de novo.*

■ A challenge under the *Rooker–Feldman* doctrine is on the basis that the district court lacks subject matter jurisdiction. The determination that a district court lacks subject matter is a question of law, which we review *de novo. See Moccio v. New York State Office of Court Admin.,* 95 F.3d 195, 198 (2d Cir.1996). Under either standard, we reach the same conclusion.

### II.

### The *Rooker–Feldman* Doctrine

■ The *Rooker–Feldman* doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment. Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment.

The first case to identify this principle was *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). There, the plaintiff sought a declaration from the federal district court that a judgment of the Indiana state court was null and void because it violated the Contracts Clause. *Id.* at 414–15, 44 S.Ct. at 150. Interestingly, the plaintiff

had petitioned the Supreme Court for direct review and been denied, so that the suit represented an end run around direct review. *Id.* at 414, 44 S.Ct. at 150. In holding that the district court lacked jurisdiction over the case, the Supreme Court stated that "[u]nder the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character." *Id.* at 416, 44 S.Ct. at 150.

Sixty years passed before the Supreme Court revisited *Rooker,* and when it did, it was concerned with the deference owed to the local courts of the District of Columbia rather than a state. In *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), plaintiffs brought separate actions challenging the validity of a rule of the District of Columbia that prevented them from sitting for the District's bar exam. *Feldman* decided that whether a federal challenge is foreclosed depends in part on whether the state proceedings were "judicial in nature." *Id.* at 476, 103 S.Ct. at 1311. The Supreme Court drew a distinction—potentially critical in the present case—between a challenge to the rule governing bar admission and a challenge to a judgment of a state court applying that rule. Because promulgation of a rule is a nonjudicial act, a federal court would have jurisdiction over a general challenge to state bar rules. *Id.* at 485–86, 103 S.Ct. at 1316–17. By the same token, a federal court would lack jurisdiction over challenges to state court decisions in particular cases arising out of judicial proceedings, even if those challenges allege that the state court's action is unconstitutional. *Id.* at 486, 103 S.Ct. at 1317. The *Feldman* Court further noted that a federal court lacks jurisdiction over any claims that are "inextricably intertwined" with a state court's determinations in a judicial proceeding. *Id.* at 482 n. 16, 103 S.Ct. at 1315 n. 16.

These principles present two questions: first, does Dr. Hachamovitch's suit seek to overturn a judgment resulting from a proceeding that is judicial in character? And second, does this § 1983 action require the district court to decide questions already decided by the state court or that are closely intertwined with an already-decided question? In attempting to answer these questions, we consider Hachamovitch's two claims separately.

### A. The Failure to Permit Reopening

■ Dr. Hachamovitch's due process challenge to the unavailability of any procedure for reopening a concluded physician disciplinary proceeding is on the jurisdiction-favoring side of the *Feldman* distinction between a challenge to the procedures as they exist and a challenge to procedures as applied. No doubt, Dr. Hachamovitch wants to achieve a better outcome in his case; but he frames his suit as a general challenge to a supposedly unconstitutional procedural defect: the absence of any mechanism for the reopening of a closed disciplinary proceeding in light of newly discovered evidence. Such a claim attacks an alleged defect of state administration or legislation rather than adjudication; to use the terminology of *Feldman,* it is not a challenge to a judicial proceeding.

A useful contrast in this regard is *Moccio v. New York State Office of Court Admin.,* 95 F.3d 195 (2d Cir.1996). There, this Court upheld the district court's determination that *Rooker–Feldman* barred federal jurisdiction over the claims of the plaintiff that the Office of Court Administration acted arbitrarily and capriciously in his case and selectively prosecuted him for petty violations while failing to prosecute others for more serious offenses. *Id.* at 198. All of Moccio's claims rested on complaints about what had occurred in his particular case, whereas Dr. Hachamovitch complains that the regulatory scheme applied to *all* physicians is violative of due process because it fails to permit reopening.

Further, the issues presented by Hachamovitch's reopening claim are not "inextricably intertwined" with any issue decided in the tortuous course of his disciplinary proceedings. According to Justice Marshall, "the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25, 107 S.Ct. 1519, 1533, 95 L.Ed.2d 1 (1987)

(Marshall, *J.*, concurring). A ruling by a federal court in favor of Hachamovitch on the reopening issue would not require overruling any action taken by the ALJ or the state courts in his case. To the contrary, Hachamovitch's reopening claim can succeed only if the ALJ and the Appellate Division were *correct* in holding that the regulatory framework precludes the reopening of hearings to receive newly discovered evidence.

This Court has also had occasion to address when claims are inextricably intertwined for purposes of *Rooker–Feldman* and has concluded that:

> the Supreme Court's use of "inextricably intertwined" means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion.

*Moccio*, 95 F.3d at 199–200.

 Hachamovitch's reopening claim would not be barred by preclusion. It is well settled that res judicata does not apply to bar a § 1983 action where a plaintiff has previously brought an Article 78 proceeding. *Colon v. Coughlin*, 58 F.3d 865, 870 n. 3 (2d Cir.1995). It is not enough, therefore, that Hachamovitch *could* have raised his reopening claim in the earlier state proceedings; Hachamovitch was entitled to reserve his federal claim for the federal courts. *See Patsy v. Board of Regents*, 457 U.S. 496, 506, 102 S.Ct. 2557, 2563, 73 L.Ed.2d 172 (1982); *Board of Regents v. Tomanio*, 446 U.S. 478, 491, 100 S.Ct. 1790, 1798, 64 L.Ed.2d 440 (1980).

Under the *Moccio* test, the question of whether Hachamovitch's reopening claim is subject to dismissal under *Rooker–Feldman* therefore turns on whether the much narrower preclusion doctrine of collateral estoppel would apply: that is, whether "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Colon*, 58

F.3d at 869. Here, those standards are not met.

First, the Appellate Division indicated that *if* it were able to reach the question, it would have found Hachamovitch's evidence insufficient to warrant reopening, but that dictum was not "necessary to the decision" for purposes of preclusion, and therefore should not bar consideration of Hachamovitch's federal claim under *Rooker–Feldman*.

 Second, the Article 78 courts are courts of limited jurisdiction. A petitioner may not challenge the validity of a legislative act or regulation in an Article 78 proceeding but may raise a claim that the administrative application of a rule to him is unconstitutional. *See Moccio*, 95 F.3d at 199 (citing *Save the Pine Bush, Inc. v. City of Albany*, 70 N.Y.2d 193, 202, 518 N.Y.S.2d 943, 512 N.E.2d 526 (1987); *Daily Star v. Board of Trustees*, 164 A.D.2d 531, 533, 564 N.Y.S.2d 848 (3d Dep't 1991)). Thus, Hachamovitch could not have presented a general challenge to the absence of reopening procedures in his Article 78 petitions. The limitations on the jurisdiction of the Article 78 courts mirror the *Feldman* distinction between cases over which the exercise of jurisdiction is or is not appropriate and define the contours of the claim that may properly go forward in federal court. Because Hachamovitch lacked "a full and fair opportunity to litigate the [constitutional] issue in the first proceeding," *Colon*, 58 F.3d at 869, the district court's consideration of that issue is not barred by principles of preclusion, or, consequently, by *Rooker–Feldman*. Hachamovitch may proceed with his claim that the regulatory scheme as it exists since the Department of Health took over responsibility for physician discipline violates due process, but may not challenge the particular application of that scheme to his case.

### B. The Exculpatory Evidence Claim

 As to the exculpatory evidence claim, by contrast, the Appellate Division actually held that Hachamovitch, as a party to an administrative proceeding, did not enjoy the same rights to exculpatory evidence that a defendant enjoys in a criminal action. The *Rooker–Feldman* doctrine therefore op-

erates to bar reconsideration of this question. We affirm the district court's restraint with respect to the exculpatory evidence claim.

## C. Questions About the Scope of Rooker–Feldman

*Moccio*, by specifying a "minimum" test, invites the argument that although Hachamovitch's claim would not be barred by the preclusion doctrines, we should extend *Rooker–Feldman's* bar on federal jurisdiction beyond the bounds of those doctrines. Whether the *Rooker–Feldman* doctrine is coextensive with preclusion or extends beyond preclusionary rules is a question that has perplexed courts and commentators. *Compare Valenti v. Mitchell*, 962 F.2d 288, 297 (3d Cir.1992) ("[T]he *Rooker–Feldman* doctrine has a close affinity to the principles embodied in the legal concepts of claim and issue preclusion."), *with Garry v. Geils*, 82 F.3d 1362, 1367–68 (7th Cir.1996) (distinguishing between *Rooker–Feldman* and preclusion); *compare also* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4469, at 663–64 (1981) (effect of *Rooker–Feldman* has been to "transform[ ] res judicata and [collateral estoppel] doctrine[s] into[ ] rule[s] that lower federal courts lack jurisdiction to review state courts"), *with* Jack M. Beermann, *Government Official Torts and the Takings Clause*, 68 B.U. L.Rev. 277, 341 (1988) ("The Supreme Court ... has extended its reasoning in the *Rooker–Feldman* doctrine beyond preclusion rules, which may vary from state to state. . . . ").

Like the abstention doctrines, *Rooker–Feldman* is a judicially-crafted limitation on federal judicial power. In the period since *Feldman* was decided, the Supreme Court has repeatedly cautioned the courts against categorical diminution (via court-constructed doctrines) of the power granted to the federal courts by Congress. Perhaps with that in mind, the majority of the Court in *Pennzoil* disregarded *Rooker–Feldman* entirely, even though it was squarely presented as an issue, preferring to abstain on the basis of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Thus, *Rooker–Feldman* may be a dubious ground for a refusal to exercise federal jurisdiction over a case (like this one) that falls within the statutory grant of subject matter jurisdiction under 28 U.S.C. § 1331. *See, e.g., County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1308 (2d Cir.1990) (" '[T]he presence of a federal basis for jurisdiction may raise the level of justification needed for abstention.' ") (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 815 n. 21, 96 S.Ct. 1236, 1245 n. 21, 47 L.Ed.2d 483 (1976)); *Liberty Cable Co. v. City of New York*, 893 F.Supp. 191, 213 (S.D.N.Y.), *aff'd*, 60 F.3d 961 (2d Cir.1995), *cert. denied*, 516 U.S. 1171, 116 S.Ct. 1262, 134 L.Ed.2d 210 (1996).

■■■ Moreover, the interests that the doctrine is designed to protect—the integrity of state court judgments—are already served, arguably adequately, by the preclusion doctrines and full faith and credit. In fact, the underlying state interests may well be better served by the federal court giving full faith and credit to the state judgment (where a preclusion defense is raised) than by the federal court's refusal to exercise jurisdiction over the case.[2]

For all of these reasons, we are disinclined at present to extend or amplify the *Rooker–Feldman* doctrine beyond the "minimum" specified in *Moccio*, absent circumstances not presented by this case.[3] *Moccio*, 95 F.3d at 199. Because Dr. Hachamovitch's claim with respect to the reopening of closed disciplinary proceedings "does not meet traditional [*Rooker–Feldman* ] requirements," *Bethphage Lutheran Serv., Inc. v. Weicker*, 965 F.2d 1239, 1244–45 (2d Cir.1992) (quoting

---

**2.** Of course, the *Rooker–Feldman* doctrine differs from preclusion in certain critical ways. For example, preclusion defenses are generally affirmative and can be waived; *Rooker–Feldman* is jurisdictional and cannot.

**3.** A case might arise that would directly challenge a state court judgment in a way that the Supreme Court clearly envisioned would be barred by *Rooker–Feldman* and yet for some reason not be precluded. This is not that case; for that reason, we have no basis to decide now whether *Rooker–Feldman* should extend beyond preclusion under those circumstances.

*Mobil Oil Corp. v. City of Long Beach,* 772 F.2d 534, 540 (9th Cir.1985) (internal quotation marks and citation omitted)), we hold that the district court's refusal to exercise jurisdiction over that claim was error.

### III.

### *Burford* Abstention

■ The district court also found that *Burford* abstention was appropriate in this case. *Burford* abstention respects the states' specialized and comprehensive regulatory schemes, in the way that *Rooker–Feldman* respects the judicial processes of the states. The Supreme Court has identified two circumstances in which a federal court should apply *Burford* abstention:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Public Serv., Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) (quoting *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244–45).

As this Court and numerous others have emphasized, however, "[a]bstention is the exception, exercise of jurisdiction the rule." *United Fence & Guard Rail Corp. v. Cuomo,* 878 F.2d 588, 593 (2d Cir.1989). In *New Orleans Public Service, Inc.,* the Supreme Court cautioned the lower federal courts to limit their invocation of *Burford* abstention:

> We have carefully defined, however, the areas in which such "abstention" is permissible, and it remains "the exception, not the rule." ... [F]ederal courts' obligation to adjudicate claims within their jurisdiction [is] "virtually unflagging."

491 U.S. at 359, 109 S.Ct. at 2513 (citation omitted).

■ Nonetheless, *Burford* abstention is appropriate where the

> exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1245. This Court has identified three factors pertinent to this determination: (1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern. *See Bethphage Lutheran Serv.,* 965 F.2d at 1243.

Here, there can be no doubt that New York's scheme for regulation of physician misconduct is specific; but this *Bethphage* factor focuses more on the extent to which the federal claim requires the federal court to *meddle* in a complex state scheme. Because Dr. Hachamovitch's due process complaint concerns the absence of a provision for reopening of a proceeding rather than the considerations, values and procedures that should shape its outcome, this *Bethphage* factor probably does not favor abstention. *See Planned Parenthood of Dutchess–Ulster, Inc. v. Steinhaus,* 60 F.3d 122, 127 (2d Cir. 1995) (*Burford* abstention unwarranted where plaintiff's federal constitutional claim could be resolved without resolution of unclear state law and without entangling federal courts in a complex state regulatory scheme); *Orozco v. Sobol,* 703 F.Supp. 1113, 1121 (S.D.N.Y.1989) (finding *Burford* abstention unwarranted where plaintiff's § 1983 action challenged the constitutionality of New York's Education Law because the constitutionality of the regulatory framework is a matter of federal law).

The second *Bethphage* factor, "the necessity of discretionary interpretation of state statutes," 965 F.2d at 1243, also does not favor abstention. As the district court found, "the [state] regulations simply do not provide the administrative agency with authority to reopen proceedings or to offer discovery out-

side of statutory limits." Dr. Hachamovitch's claim would not put the federal court into the business of interpreting the state regulatory regime: in this case, there is no provision to interpret.

■ As to the final *Bethphage* factor—whether the subject matter is traditionally one of state concern—there can be no doubt that the disciplining and licensing of physicians are matters of paramount importance to the state. However, numerous cases have indicated that *Burford* abstention is not required even in cases where the state has a substantial interest if the state's regulations violate the federal constitution. *See, e.g., Alliance of American Insurers v. Cuomo,* 854 F.2d 591, 601 (2d Cir.1988) (" 'The state has no right to an unconstitutional policy, coherent or otherwise.' ") (quoting *Allstate Ins. Co. v. Sabbagh,* 603 F.2d 228, 232 (1st Cir.1979)). As Justice Marshall noted, "[t]here is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." *Zablocki v. Redhail,* 434 U.S. 374, 380 n. 5, 98 S.Ct. 673, 678 n. 5, 54 L.Ed.2d 618 (1978).

The *Bethphage* factors and the weighing of them in this case therefore do not favor abstention. We detect no federal meddling in an undeniably complex area of state concern, merely the analysis of what due process demands. The federal courts are well-placed to undertake such analysis without undue intrusion upon the states' interests and prerogatives.

## CONCLUSION

We reverse as to Dr. Hachamovitch's claim that the absence of a mechanism for the reopening of closed physician-discipline cases violates due process, and we affirm as to the exculpatory evidence claim and as to Dr. Hachamovitch's claims relating to the particular application of the New York regulatory scheme to him. The case is remanded for consideration as to whether the plaintiff is entitled to a preliminary injunction.