**Jeffrey HARP, Plaintiff,**

v.

**CITY OF NEW YORK, Defendant.**

**No. 01 Civ. 6604(JGK).**

United States District Court,
S.D. New York.

Aug. 29, 2002.

Jeffrey Harp, Queens Village, pro se.

Eugene Prosnitz, Bronx, NY, for Jeffrey Harp.

Shauna Weinberg, Corporation Counsel, New York City, for City of New York.

### OPINION AND ORDER

KOELTL, District Judge.

The plaintiff, Jeffrey Harp, brought this action pursuant to 42 U.S.C. §§ 1981 and 1983, alleging that his termination as an employee of the defendant was racially discriminatory. The defendant now moves, pursuant to Fed.R.Civ.P. 12(b)(1), to dismiss the complaint on the basis that this Court lacks subject matter jurisdiction over the plaintiff's claim.

I

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may consider matters outside the pleadings, such as affidavits, documents and testimony. *See Phifer v. City of New York,* 289 F.3d 49, 55 (2d Cir.2002); *Antares Aircraft v. Federal Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), *aff'd on remand,* 999 F.2d 33 (2d

Cir.1993); *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986); *John Street Leasehold, LLC v. Capital Mgmt. Res., L.P.*, 154 F.Supp.2d 527, 533–34 (S.D.N.Y.2001), *aff'd*, 283 F.3d 73 (2d Cir.2002). The standard used to evaluate a Rule 12(b)(1) motion is thus similar to that used for summary judgment under Rule 56. *See Kamen*, 791 F.2d at 1011. The plaintiff has the ultimate burden of proving the Court's jurisdiction by a preponderance of the evidence. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996); *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 762 (2d Cir.1983); *Fier v. United States*, No. 01 Civ. 2225, 2002 WL 453177, at \*1 (S.D.N.Y. Mar 25, 2002); *see also Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.1991) (when subject matter jurisdiction is challenged under Rule 12, plaintiff bears the burden of persuasion); *Martin v. Reno*, No. 96 Civ. 7646, 1999 WL 527932 (S.D.N.Y. July 22, 1999).

## II

In this case, the pleadings, affidavits, submissions on file and other matters of public record indicate the following relevant facts, which are undisputed unless otherwise indicated.

The plaintiff, who is African American, was employed by the defendant as a police officer beginning in 1983, and eventually held the rank of Detective in the New York City Police Department ("NYPD"). (Compl. ¶ 7; Declaration of Shauna Weinberg, dated Dec. 12, 2001 ("Weinberg Decl."), Ex. 1 at 32.) After holding a hearing, an NYPD Assistant Deputy Commissioner for Trials ("DCT") determined, on June 8, 1998, that the plaintiff had made false and misleading statements at an official interview. (Weinberg Decl., Ex. 1 at 32.) Although the plaintiff had no prior disciplinary record, had received an "exceeds standards" rating on his last performance evaluation, and had been a police officer for approximately fifteen years, the DCT recommended that the plaintiff be dismissed from the NYPD. (*Id.* at 33.) The DCT explained that the plaintiff's conduct was especially egregious given that the plaintiff was assigned to the Internal Affairs Bureau, and was therefore responsible for investigating allegations of misconduct against other members of the Department; that the plaintiff was aware of a December 12, 1996 policy declaration that false statements made at an official interview would be punishable by dismissal; and that the plaintiff was not tricked by his interviewers into lying, but was offered numerous opportunities to change his story and was confronted with documentary evidence. (*Id.* at 32–33.) On July 21, 1998, the Police Commissioner dismissed the plaintiff from the NYPD. (*Id.*, Ex. 2.)

On October 22, 1998, the plaintiff initiated an action in the New York State Supreme Court, New York County, pursuant to N.Y.C.P.L.R. art. 78, seeking a reversal of the termination of his employment and reinstatement with back pay and benefits. (*Id.*, Ex. 3.) In his Article 78 petition, the plaintiff alleged that the DCT's determination that he had made false official statements was not supported by substantial evidence, and therefore the decision to dismiss him from the NYPD also was not supported by substantial evidence. (*Id.* ¶¶ 26–27.) The plaintiff also alleged that other police officers who had made false official statements, as determined by the NYPD, had not been dismissed; that the NYPD acted arbitrarily and capriciously in dismissing the plaintiff, and abused its discretion; and that his dismissal was an excessive punishment. (*Id.* at 33–35.)

The Supreme Court transferred the petition to the Appellate Division, First Department for disposition. (*Id.*, Ex. 5.) The Appellate Division found that substantial evidence supported the determination that

the plaintiff had made false statements at his official interview, but that his dismissal and forfeiture of pension rights was "a shockingly excessive sanction" for the plaintiff's misconduct and exceeded the NYPD's discretion. *Harp v. New York City Police Dep't*, 277 A.D.2d 147, 717 N.Y.S.2d 108, 109 (App.Div.2000), *rev'd*, 96 N.Y.2d 892, 730 N.Y.S.2d 786, 756 N.E.2d 74 (2001). On July 10, 2001, the New York Court of Appeals reversed the order of the Appellate Division and dismissed the plaintiff's Article 78 petition in its entirety, stating that it could not be concluded "that, as a matter of law, the penalty of dismissal imposed by the Commissioner shocks the judicial conscience." *Harp*, 730 N.Y.S.2d 786, 756 N.E.2d at 75 (punctuation and citation omitted). The plaintiff subsequently brought this federal action, alleging that the defendant acted in a racially discriminatory manner when it terminated the plaintiff. (Compl.¶¶ 24, 36.) In addition to reinstatement with back pay and benefits, in this action the plaintiff seeks compensatory damages for "mental anxiety and emotional distress," a declaration that the defendant deprived the plaintiff of equal protection of the laws, and an award of attorneys' fees and costs. (Compl. at 7.)

### III

The defendant alleges that the plaintiff's claim is barred by res judicata and the *Rooker–Feldman* doctrine.

■ Under the *Rooker–Feldman* doctrine, a federal district court has no jurisdiction over a case that seeks to reverse or modify a state court decision, or a case in which the federal claims presented are "inextricably intertwined" with the merits of the state court's judgment. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 483 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Phifer*, 289 F.3d

at 55–56; *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir.1998); *Moccio v. New York State Office of Court Admin.*, 95 F.3d 195, 198 (2d Cir.1996). Such federal review may only be obtained in the Supreme Court. *Feldman*, 460 U.S. at 476, 103 S.Ct. 1303; *Rooker*, 263 U.S. at 416, 44 S.Ct. 149; *Phifer*, 289 F.3d at 55; *Hachamovitch*, 159 F.3d at 693; *Moccio*, 95 F.3d at 198.

■ It is plain that the plaintiff's requests for declaratory and injunctive relief reversing the penalty of dismissal and forfeiture of pension rights is barred by the *Rooker–Feldman* doctrine. This was the penalty upheld by the New York Court of Appeals and this Court lacks the jurisdiction to reverse or modify that penalty. *See Phifer*, 289 F.3d at 55.

The plaintiff also seeks damages based on the claim that he was the victim of racial discrimination because the NYPD treated him differently from the way it treated non-African American police officers charged with similar offenses. This claim requires a consideration of whether the claim is "inextricably intertwined" with the decision by the New York State Courts which can only be reviewed in federal court by the Supreme Court.

■ The Court of Appeals for the Second Circuit has interpreted the term "inextricably intertwined" to be co-extensive with the law of preclusion. "We agree that the Supreme Court's use of 'inextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of that claim would be barred under the *Rooker–Feldman* doctrine if it would be barred under the principles of preclusion." *Moccio*, 95 F.3d at 199–200; *see Phifer*, 289 F.3d at 56–57 (declining to extend or amplify interpretation of "inextricably intertwined" beyond the "minimum" specified

in *Moccio* ); *Hachamovitch,* 159 F.3d at 694–95 (same).

The plaintiff has brought no claim in this federal action that he could not have brought in his action before the State courts. New York courts routinely consider federal constitutional claims, including equal protection claims, in the context of Article 78 proceedings. *See, e.g., Guido v. New York State Teachers' Retirement Sys.,* 94 N.Y.2d 64, 699 N.Y.S.2d 697, 721 N.E.2d 947, 952 (1999); *Doe v. Coughlin,* 71 N.Y.2d 48, 523 N.Y.S.2d 782, 518 N.E.2d 536, 539–42 (1987); *see Hachamovitch,* 159 F.3d at 695 (Article 78 petitioner may "raise a claim that the administrative application of a rule to him is unconstitutional"). The plaintiff argues that he was unable to present evidence tending to establish that other police officers were punished less harshly for similar violations, but in fact the Appellate Division allowed the plaintiff to expand the record on appeal to include such evidence and to discuss the evidence in his reply brief before that court. (Weinberg Decl., Ex. 6–7.) The plaintiff renewed his arguments regarding disparate treatment before the Court of Appeals, and further claimed that the lack of uniform standards for determining when a police officer's false statements would result in dismissal violated the Constitutional guarantee of equal protection. (*Id.,* Ex. 10 at 4–7.) Thus, to the extent that the plaintiff alleges that his dismissal was arbitrary, capricious, not based on substantial evidence, excessive, or disproportionate to the penalties imposed on similarly situated officers, those precise claims were raised in the State proceedings and "*Rooker–Feldman* plainly will bar the action." *Phifer,* 289 F.3d at 56 (quoting *Moccio,* 95 F.3d at 198).

■ However, in the Article 78 proceedings, the plaintiff did not assert that he had been discriminated against because of his race, although he could have made such a claim. The question, then, is whether this claim would be barred under "the principles of preclusion"—that is, by claim preclusion (res judicata) or issue preclusion (collateral estoppel.) *Moccio,* 95 F.3d at 200. Res judicata does not apply to the plaintiff's racial discrimination claim because in this action, he seeks compensatory damages that were not available in the Article 78 proceedings. *See Phifer,* 289 F.3d at 56; *Burka v. New York City Transit Auth.,* 32 F.3d 654, 657–58 (2d Cir. 1994); *Wachtmeister v. Swiesz,* No. 01–CV–1137, 2002 WL 1585526, at *3 (N.D.N.Y. June 12, 2002); *see also Hachamovitch,* 159 F.3d at 695 ("It is well settled that res judicata does not apply to bar a § 1983 action where a plaintiff has previously brought an Article 78 proceeding.").

■ "Under New York law, collateral estoppel will apply only if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Moccio,* 95 F.3d at 200.

In *Moccio,* one of the plaintiff's claims was that the state agency defendant failed to treat him like others similarly situated persons and thereby violated the Equal Protection Clause of the Fourteenth Amendment. The plaintiff did not allege in federal court that the state agency had classified him on suspect lines, or that his fundamental rights had been impaired. *Moccio,* 95 F.3d at 201. Moccio's claim thus triggered only rational basis review. *Id.* The Court of Appeals for the Second Circuit held that the state court's determination in the Article 78 proceeding that the plaintiff's termination did not shock the conscience precluded any finding that the termination lacked a rational basis. *Id.* Therefore, under *Rooker–Feldman,* the district court lacked jurisdiction to hear Moccio's claim. *Id.* In contrast, the plain-

tiff in *Phifer* alleged in federal court that an administrative agency's decision to remove a child from her mother's custody was motivated by racism. *Phifer*, 289 F.3d at 58. The State family court had found that the child was lawfully in the custody of the agency and that the agency had removed her in a lawful manner. *Id.* at 59 n. 3. The Court of Appeals for the Second Circuit held that the family court had not actually or necessarily decided whether racial discrimination motivated the decision, noting that "[l]ogically, the fact that the family court found that the accusations of neglect were true does not necessarily mean that the defendants' initial suspicions were not colored by racism." *Id.* at 59.

In this case, the New York Court of Appeals found that the penalty imposed was not so disproportionate to the appellant's offense that it shocked the conscience. *Harp*, 730 N.Y.S.2d 786, 756 N.E.2d at 75. The Court of Appeals did not disturb the Appellate Division's finding that the defendant's determination that the plaintiff had made a false statement at an official interview was supported by substantial evidence. *Id.; see Harp*, 717 N.Y.S.2d at 109. Accordingly, the Court of Appeals dismissed the plaintiff's petition in its entirety. *Harp*, 730 N.Y.S.2d 786, 756 N.E.2d at 75. The New York courts thus determined that the defendant had sufficient cause to find that the plaintiff had committed misconduct and that the penalty for that conduct was not unduly or irrationally excessive.

The state courts did not, however, address or decide whether the defendant acted with a racially discriminatory motive in bringing and pursuing charges against the plaintiff and imposing the penalties it did against the plaintiff, and logically, such a motive could underlie the defendant's actions even if the finding of misconduct was supported by the evidence and the termi-

nation was proportionate to the misconduct. As in *Phifer*, "this would not be a case in which 'the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" *Phifer*, 289 F.3d at 60 (citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring)). Accordingly, this Court has subject matter jurisdiction over the plaintiff's claims for damages alleging racial discrimination by the defendant.

For the reasons explained above, it also follows that the defendant's alternative argument that this action is barred by claim preclusion or res judicata is also without merit. *See Phifer*, 289 F.3d at 56; *Hachamovitch*, 159 F.3d at 695.

### Conclusion

For the reasons explained above, the defendants' motion to dismiss the complaint for lack of subject matter jurisdiction is denied.

**SO ORDERED.**